## STRONG v. UNITED STATES.
### No. 2488.

Circuit Court of Appeals, First Circuit.
Jan. 2, 1931.

Essex S. Abbott, of Boston, Mass. (Joseph V. Carroll, of Boston, Mass., on the brief), for appellant.

Haven Parker, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., Elihu D. Stone and Oscar U. Dionne, Asst. U. S. Attys., all of Boston, Mass., on the brief), for the United States.

Before BINGHAM, ANDERSON, and WILSON, JJ.

BINGHAM, Circuit Judge.

This is an appeal from a judgment of the District Court for Massachusetts in a libel of information brought to condemn and forfeit certain liquors alleged to be in the possession of the federal prohibition administrator in Massachusetts. The libel in substance alleges that on December 13, 1928, the federal prohibition administrator for the state of Massachusetts seized within the district of Massachusetts a quantity of intoxicating liquors (describing them), which were in the possession of John Strong, at Norton avenue, Easton, Mass., which intoxicating liquors the federal prohibition administrator now has in the district of Massachusetts, as forfeited to the United States for the following reasons:

That said intoxicating liquors consisted of the following, to wit, intoxicating liquors, including distilled spirits, malted and vinous liquors, and other intoxicating liquors, unlawfully and knowingly possessed for beverage purposes, in violation of the said Act of Congress of October 28, 1919 (27 USCA § 1 et seq.).

The prayer was that process be issued to bring the liquors into the custody of the court, that notice be issued to parties in interest, and, due process having been had, that the liquors be forfeited and the proceeds be distributed according to law.

An order of notice having been issued and served, John Strong filed a claim and answer setting out that he was the owner of the property in question, and alleging that it was unlawfully and wrongfully taken from his premises by federal officers without right and in violation of his rights under the Constitution and laws of the United States.

On April 2, 1930, a jury trial having been waived in writing, the case came on for hearing. Before trial, the claimant filed a motion to suppress the evidence obtained through the search and seizure, which was denied without prejudice. This motion was renewed at the close of the evidence and denied, subject to exception.

After hearing, it was decreed that the liquors be condemned as forfeited to the United States and destroyed. It is from this decree that the appeal is taken.

The claimant made the following requests for rulings:

(1) That upon all the evidence the libel should be dismissed; (2) that the search of the premises by the officers was without probable cause; (3) that the claimant had the right to order the officers from the premises, and their refusal to go rendered them trespassers; (4) that, the federal officers having come on the premises without a search warrant, and there being no evidence of a crime being committed in their presence which could be determined by the use of their senses, they had no right to remain there after being ordered to leave, and their conduct in remaining was wrongful, and any search made by them thereafter was unlawful; (5) that intoxicating liquors seized as a result of an unlawful search and seizure are not subject to forfeiture; and (6) that the libel contained no allegation that the liquors seized were unlawfully possessed by the claimant at the time and place of seizure, and that the seizure was lawfully made, and should be dismissed. Each of these requests were denied, subject to exception.

Strong has not been charged with, or convicted of, unlawful possession.

The place searched, and where the liquors were seized, was a cement cellar called by the claimant a "root cellar," located on his premises in Easton, Mass., "outside of but near to the claimant's barn." The District Judge found that on December 13, 1928, four federal prohibition officers went upon Strong's premises at Easton, some of whom called at his house and informed him that they were federal prohibition agents, and that they had been advised that liquor was being stored on his premises; that, on being asked if he had any objection to his premises being searched, he made none at the time, and went with them

to the barn where he expected the search to be made; that the agents were not looking for liquor in the barn, but, after entering and passing through to its other side, they began to investigate a concrete or root cellar located a few feet from that side of the barn; that this cellar was covered with boards, and on the boards had been installed a power saw; that, as soon as Strong saw the agents begin to scrape away the snow from the board covering, he objected and demanded evidence of their authority; that, upon being shown evidence that they were federal agents, and told by them that they had a right to search outside the building without a warrant, he made no further objection.

The court also made the following special findings:

"(1) The claimant, at the time the Prohibition Agents came to the premises, voluntarily permitted them to come upon the premises without a search warrant for the purpose of searching said premises;

"(2) That claimant, at the time the Federal Prohibition Agents came upon his premises without a search warrant, voluntarily permitted them to remain upon said premises for the purpose of searching certain portions of said premises;

"(3) The claimant, before the discovery of the intoxicating liquor by the Prohibition Agents, did not consent to a search without a search warrant, and without objection on his part, of the place [the so-called 'root cellar'] where the intoxicating liquor on said premises was found and seized."

The claimant duly excepted to the findings 1 and 2.

The first special finding, we think, was inadvertently made, as the uncontradicted evidence was that the prohibition agents came upon the premises without the knowledge of the claimant, and, this being so, he could not reasonably be found to have voluntarily permitted them to come there for any purpose. He could then permit them to remain, and the court so found in the second special finding. And the question is whether, having consented to a search of a certain portion of his premises, the barn (general findings and special finding 2), without a warrant, he, as a matter of law, must be held to have consented to a search of the root cellar and waived his constitutional rights, in view of the express finding that he did not so consent (special finding 3).

We are of the opinion that the claimant did not intend to waive any of his constitutional rights with reference to a search of the root cellar, and that no waiver was effected; that the search of the root cellar, having been made without a warrant and without Strong's consent, was unlawful; and that the motion made before trial and at the close of the evidence, to suppress and strike out the evidence obtained through the search and seizure, should have been granted.

Although the search and seizure were unlawful and the evidence procured thereby was inadmissible, there was other adequate evidence, taken in connection with admitted facts, to support the allegations of the libel and warrant the decree entered. The claimant in his answer denied none of the allegations of the libel. It was alleged in the libel that on December 13, 1928, the federal prohibition administrator seized the liquors, which were in the possession of John Strong, the claimant; that they consisted of "1444 bottles Pet. Dawson, 564 bottles Bull Lade & Co., 463 bottles Sherry wine, 94 bottles Port wine, 132 bottles J. Dewar Scotch, 10 pints Meadville Rye, ⅓ gallon can alcohol, 107 bottles Booth Old Gin, 48 bottles Old Tom gin, 19 bottles Charl. rum"; that said liquors were "intoxicating liquors, including distilled spirits, malted and vinous liquors and other intoxicating liquors, * * * unlawfully and knowingly possessed for beverage purposes in violation of the Act of Congress of October 28, 1919."

The claim or answer alleged that the claimant was the bona fide owner of the liquors enumerated in the libel (describing them in the language of the libel). It did not deny that the liquors were taken ·from the claimant's possession, but averred that they were unlawfully taken from his premises by federal officers without leave or license and in violation of his rights under the Constitution. Neither did it deny the allegation of the libel that the liquors were intoxicating liquors which he "unlawfully and knowingly possessed for beverage purposes, in violation of the Act of Congress of October 28, 1919." The facts thus alleged in the libel and not denied in the answer must be taken to be true. The claimant took the stand and testified. From his evidence it appeared that the premises searched were not his dwelling house, but a "root cellar" located near his barn; that the root cellar was closed at the top by a door; that on the door was placed a circular saw supported by a steel frame, which had to be pushed over in order to get into the cellar; that he objected to the officers searching his premises, including the

root cellar, without a warrant; and "that he was not present when the agents found what was in the cellar."

It thus appears, irrespective of any evidence obtained by the search, that the place searched was not the claimant's private dwelling within the meaning of section 25 of title 2 of the Prohibition Act (27 USCA § 39) or of the Espionage Act (40 Stat. 217). It was an outhouse in close proximity to the claimant's barn, and evidently designed for the storage of potatoes and other vegetables. The most that can be said for this structure is that, though not a private dwelling, it was a "house" within the meaning of that term as used in the Fourth Amendment to the Constitution; and the question is whether, the facts alleged in the libel being admitted, the court was warranted in adjudging a forfeiture of the liquors under title 2, section 25 (27 USCA § 39), in view of the fact that the seizure was not lawfully made either under a search warrant or otherwise.

Section 25 provides: "It shall be unlawful to have or possess any liquor * * * intended for use in violating this title or which has been so used, and no property rights shall exist in any such liquor. * * * A search warrant may issue as provided in Title XI of public law numbered 24 of the Sixty-fifth Congress, approved June 15, 1917, and such liquor * * * so seized shall be subject to such disposition as the court may make thereof. If it is found that such liquor * * * was so unlawfully held or possessed, or had been so unlawfully used, the liquor * * * shall be destroyed, unless the court shall otherwise order." (41 Stat. 315.) See, also, the Judicial Code, § 24, par. 3 (28 USCA § 41(3).

 The contention is made, and not without some support [Ghisolfo v. United States [C. C. A.] 14 F.(2d) 389; United States v. Franzione, 52 App. D. C. 307, 286 F. 769], that, under section 25, the court is without jurisdiction to forfeit contraband liquor, unless it has been seized under a search warrant, on the theory that the second sentence, "A search warrant may issue as provided in Title XI * * * and such liquor * * * so seized shall be subject to such disposition as the court may make thereof," is the one conferring jurisdiction on the court and the words "so seized" mean seized under a search warrant. This contention, however, though upheld in Ghisolfo v. United States, supra (1926), was, in 1928, repudiated by the same court in Ng Ka Py Cases, 24 F.(2d) 772, 773. It was there pointed out that in the Ghisolfo Case no seizure had been made, by a search warrant or otherwise, and consequently the jurisdictional prerequisite of the possession of the offending res was wholly wanting. It is also pointed out that the third sentence of section 25 is the one under which the court proceeds in the exercise of its jurisdiction to condemn property or liquors, outlawed under the first sentence of the section; and the court unquestionably held that a seizure, under a search warrant, was not essential to its exercise of jurisdiction under section 25 in a proceeding to condemn contraband liquors, for it said: "All that we decide is that, the goods being contraband and subject to forfeiture, the seizure thereof, rightfully made, though without a search warrant, furnished ample basis for invoking the power of the court to adjudge forfeiture." It expressly refrained from deciding "whether, in a case where possession is obtained through an unlawful search, the unlawfulness forbids jurisdiction, or only affects incidents of its exercise"; and it refrained from so doing, for the reason that it found the seizure there under consideration a lawful one, though not under a search warrant.

It has been decided over and over again that the basic fact to the exercise of the court's jurisdiction under statutes authorizing the condemnation of outlawed property is its actual or constructive possession of the property. In Dodge v. United States, 272 U. S. 530, 532, 47 S. Ct. 191, 71 L. Ed. 392, the Supreme Court said: "However [the seizure was] effected * * * the jurisdiction of the Court was secured by the fact that the res was in possession of the prohibition director when the libel was filed." See, also, The Richmond, 9 Cranch, 102, 3 L. Ed. 670; The Ann, 9 Cranch, 289, 3 L. Ed. 734; The Merino, 9 Wheat. 391, 403, 6 L. Ed. 118; The Underwriter (C. C. A.) 13 F.(2d) 433, 434; and it has also been held that the legality of the seizure has nothing to do with the question of jurisdiction, unless the statute under which the proceeding is brought shall so condition it. See The Richmond, 9 Cranch, 102, 3 L. Ed. 670; The Ann, 9 Cranch, 289, 3 L. Ed. 734; The Merino, 9 Wheat. 391, 403, 6 L. Ed. 118. We do not regard the first and third sentences of section 25, which confer jurisdiction, as so conditioning it. Ng Ka Py Cases (C. C. A.) 24 F.(2d) 772; Carroll v. United States, 267 U. S. 132, at page 159, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; United States v. One Lot of Intoxicating Liquor (D. C.) 27 F.(2d) 903; Avignone v. United States (C. C. A.) 12 F.(2d) 509.

██ It is clear enough, if the jurisdiction to condemn contraband liquors, conferred by the first and third sentences of section 25, title 2 (27 USCA § 39), is not thereby conditioned upon a seizure under a search warrant, as we hold it is not, that it is not by that statute conditioned upon a lawful seizure under a search warrant or otherwise; and that the only requisite for its exercise is that at the time the libel is brought the contraband liquors shall be in the possession of the prohibition director, or of the court. Dodge v. United States, 272 U. S. 530, 532, 47 S. Ct. 191, 71 L. Ed. 392, and cases supra.

Further light is thrown on the question here discussed by considering "on what event" under the statute a divestiture of the title or right of the claimant to the liquors took place, that is, "whether on the commission of the offence, the seizure, or the condemnation." United States v. 1,960 Bags of Coffee, 8 Cranch, 398, 405, 3 L. Ed. 602; U. S. v. The Mars, 8 Cranch, 417, 3 L. Ed. 609; Gelston v. Hoyt, 3 Wheaton, at page 311, 4 L. Ed. 381. In these cases and in United States v. Grundy, 3 Cranch, 337, 350, 2 L. Ed. 459, it is pointed out "that in all forfeitures accruing at common law, nothing vests in the government until some legal step shall be taken for the assertion of its right," such as a seizure in its behalf, or its bringing a libel of forfeiture, an adoption of the seizure as its own. But, even though at common law such a step is essential, it is in these cases held that Congress may provide by law on what event the divestiture of the right or title shall take place, and that it may fix the commission of the offense as the event, even to the prejudice of a bona fide purchaser for value without notice. United States v. 1,960 Bags of Coffee, supra; U. S. v. The Mars, supra.

There can be no question but that Congress in section 25 fixed the event, upon which a divestiture of the claimant's title and right to the liquors would take place, to be his possession of liquors intended for use in violation of the act, for that section expressly provides that in that event "no property rights shall exist in any such liquor." The claimant, therefore, was divested of all title or right to the liquors immediately upon his obtaining possession of them; and it is difficult to see what standing he has in court as claimant of the liquors, for, on the happening of that event, he not only became divested of all title and right to the possession of the liquors, but thereupon the government became "entitled to the possession" of them. Carroll v. United States, 267 U. S. 132, at foot of page 139, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; Boyd v. United States, 116 U. S. 616, 623, 6 S. Ct. 524, 29 L. Ed. 746. As said by this court in Giles v. United States, 284 F. 208, 210, "the main purpose of this section [section 25] is to put intoxicating liquor, illegally possessed, * * * into the same category as gambling implements, counterfeit money, obscene literature, and other forms of outlawed articles." And as the jurisdiction of the court to order a forfeiture, as heretofore pointed out, depends upon the liquors being in its actual or constructive possession at the time the libel was filed, any objection the claimant may have to its jurisdiction is unfounded, for the provisions of the statute (section 25) conferring jurisdiction do not condition the court's jurisdiction upon a lawful seizure under a search warrant or otherwise. Furthermore, where the government adopts a seizure, "it is wholly immaterial * * * who makes the seizure, or whether it is irregularly made or not, * * * provided the adjudication is for a sufficient cause." Taylor v. United States, 3 How. 197, at page 205, 11 L. Ed. 559, and cases there cited.

When a libel is brought to condemn liquors illegally possessed, which have been seized and are in the actual or constructive possession of the court at the time the libel is filed, the seizure not being conditioned by statute upon its being lawfully made, a lawful seizure is no more essential to the jurisdiction of the court to condemn the liquors than is the lawful arrest of a person, produced in court to answer to an indictment or criminal information, essential to its jurisdiction to pronounce sentence. In neither case is the lawfulness of seizure or arrest of any consequence.

In view of the foregoing, we do not regard it as necessary that the libel should have alleged that the seizure was lawfully made; and what was said by this court in Castro v. United States, 23 F.(2d) 263, 265, and United States v. Talent, 32 F.(2d) 630, to the effect that the libel should contain an allegation that the seizure was lawfully made, is disapproved.

The judgment of the District Court is affirmed.

ANDERSON, Circuit Judge, concurs in the result.