## UNITED STATES v. GOODHUES.

District Court, D. Maryland.
Oct. 27, 1931.

R. Bayly Chapman and John R. Elly, both of Baltimore, Md., for petitioner.

Simon E. Sobeloff, U. S. Atty., and Cornelius Mundy, Asst. U. S. Atty., both of Baltimore, Md., for the United States.

CHESNUT, District Judge.

George S. Goodhues resides with his family at 1603 East Thirty-Third street, in Baltimore city. The house is his residence and dwelling house, and is used for no other purpose. On March ———, 1931, this dwelling house was visited by prohibition agents and searched without a search warrant. A large quantity of wines and whiskies was seized and removed by the agents. The petitioner was summoned to appear before the United States commissioner to answer a criminal charge for the unlawful possession of intoxicating liquors. Upon his appearance before the United States commissioner, his counsel announced their in-

tention to file this petition, and thereupon the proceedings before the commissioner were adjourned to await the disposition of the matter by the court. The petition now asks that the evidence obtained by the agents as a result of the search and seizure shall be suppressed and the liquors shall be returned by order of court to the petitioner. The petitioner names as respondents several prohibition agents who seized the liquors and who now have the liquor in their custody, and also the district attorney. These respondents have answered, justifying, on their part, the original seizure of the liquors and protesting their return to the petitioner. Upon the hearing of the petition, testimony was submitted in support of the respective contentions.

At the outset, I had some question as to the propriety of the procedure adopted in this case. While the commissioner and district attorney are officers of this court, the prohibition agents are not; and, in the absence of the pendency of a criminal proceeding, summary procedure to obtain the return of liquor seized by prohibition agents has been held not proper, at least where there has been no unreasonable delay on their part in taking proceedings for forfeiture of the liquor. See In re Behrens, 39 F.(2d) 561 (C. C. A. 2d). But in this case there is a criminal charge now pending before the commissioner, and the jurisdiction of this court is therefore definitely established by Go-Bart Importing Co. v. United States, 282 U. S. 344, 51 S. Ct. 153, 75 L. Ed. 374. While a case is pending before a commissioner, it would seem undesirable for the District Court to pass upon questions which primarily should be acted on by the commissioner; because it is entirely possible that at the hearing before him the criminal charge may be dismissed, and the practice of appealing to the court prior to a hearing before the commissioner is not to be approved save in exceptional cases. In this case, as it appears, the commissioner has adjourned the hearing before him pending the ruling on this petition, and, as all parties hereto have requested that the court now rule upon the matter on its merits, I have concluded to do so. It appears there has not been uniformity of procedure in such matters, but summary petitions of this nature have been quite common. See Goodman v. Lane (C. C. A.) 48 F.(2d) 32; United States v. Specified Quantities of Intoxicating Liquor et al. (C. C. A.) 7 F.(2d) 835.

■■ Testimony on behalf of the petitioner as to the facts and circumstances of the search and seizure· is substantially as follows: Two prohibition agents called at the petitioner's house on March 23, 1931, at about 1:30 o'clock p. m. Petitioner's sister-in-law, then a visitor at the house, opened the door, but declined to admit the agents. Petitioner's wife then telephoned him at his place of business and requested him to come home immediately. He arrived shortly thereafter, found the agents on the front porch, and states that they told him they had information that he had a still in his cellar, and that they would like to search the place, and gave him to understand that they had a search warrant to search the premises. Petitioner denied that he had a still, but admitted that he had some pre-war (pre-prohibition) liquor. He admitted the agents to the house, and they proceeded to the dining room, from which a door leads to the cellar. Upon arriving in that room, he demanded an inspection of the warrant, and the agents informed him they did not have a search warrant, but, as they were in the house, they intended to search anyhow. He then called his attorney, Mr. John R. Elly, and told him the situation by telephone, and thereupon Mr. Elly talked by telephone with Agent Duckworth and protested against a search of the dwelling without a warrant. The attorney also told the petitioner to call the police station and ask for police protection. This the petitioner did, and in a few minutes four police officers arrived. Up to that time no further action had been taken by the agents, but upon the arrival of the police officers the agents exhibited their credentials, and the officers then told the petitioner that they would have to support the agents. The door leading to the cellar was locked, and the agents stated they were prepared to break down the door unless the petitioner unlocked it. Yielding to this threat of force and in order to avoid damage to his property, the petitioner thereupon unlocked the door, and the agents, the petitioner, and the officers went to the cellar, and shortly thereafter petitioner's attorney, Mr. Elly, arrived on the scene. The agents demanded that the cellar closets containing the liquor should be opened and threatened to break them open if they were not voluntarily unlocked by the petitioner. Thereupon the petitioner yielded to the demands and unlocked the closets. Upon inspection of the closets, Agent Duckworth stated that all of the liquor could not be

pre-war stuff, and announced his intention of destroying it. Against this Mr. Elly and the petitioner vigorously protested, and finally the liquors were removed from the dwelling by the agents and are now in the custody of the Prohibition Unit of Baltimore, an order of court having been signed on March 26, 1931, that the liquors should not be destroyed pending further hearing in the matter.

If this account of the circumstances of the search and seizure is correct, it is entirely clear as a matter of law that the search was unreasonable and illegal and constituted a clear violation of the Fourth Amendment to the Constitution of the United States. Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70· L. Ed. 145, 51 A. L. R. 409; Amos v. United States, 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654; Go-Bart Importing Co. v. United States, 282 U. S. 344, 51 S. Ct. 153, 75 L. Ed. 374. And the assistant district attorney so concedes.

The substance of the testimony on behalf of the agents is in effect as follows: They received an anonymous complaint that the petitioner had a still in his cellar with a tunnel leading therefrom to his garage, and that he frequently changed the color of his automobile (the implication being that petitioner was engaged in manufacturing and selling liquor contrary to law). Acting on this anonymous information only, they went to the petitioner's house, stationed two agents in the rear of the premises and two went to the front door. When petitioner arrived, they did not inform him they had a search warrant, but stated they had information that he had a still, and he replied that he did not have a still, but did have some pre-war liquor; and petitioner said he would show them his premises and the liquor. Thereupon, acting on his invitation and before the arrival of the police officers, they went into the house and were taken by the petitioner into the cellar, and one of the closets containing the liquor was opened voluntarily by petitioner and the contents exhibited. Upon inspection of the liquors, Agent Duckworth announced that he was satisfied that all the liquor could not be pre-war stuff, and thereupon he immediately placed petitioner under arrest and announced his intention to remove the liquors. Petitioner objected to this, and then for the first time demanded a search warrant, and then asked leave to communicate with his attorney. The agents assented to this, and, according to their statement, allowed peti-

tioner to relock the closet, and all returned upstairs to the dining room, the door leading therefrom to the cellar being locked by the petitioner. And the agents assert that it was only after this voluntary exhibition to them of the liquors that the petitioner called his attorney by telephone and summoned the police. The contention of the agents in justifying the search and seizure was that the petitioner had voluntarily exhibited the liquors to them, that they then found evidence of violation of the law, immediately arrested petitioner, and that the subsequent search was justified as incidental to the arrest. See Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409.

The crucial point in the conflict of the testimony of the respective parties is on the point whether the agents were taken into the cellar and shown the liquor and thereupon placed the petitioner under arrest before the arrival of the police officers. Two agents testify positively that this occurred. A third agent (one of the two stationed in the rear and called into the cellar after the police officers had arrived) in part corroborates Agents Duckworth and Chandler. On the other hand, petitioner's account of the matter is positively and explicitly confirmed by the testimony of the sister-in-law, and in material respects by three of the police officers (the fourth not having testified in the case), and by Mr. Elly, his attorney. Agent Duckworth testified, in substance, that in his telephone conversation with Mr. Elly he stated that he had already been shown the liquors by the petitioner and on that account he justified the continued search without a search warrant, also stating that he told Mr. Elly that he had made an arrest. This is explicitly denied by Mr. Elly. According to the testimony of both sides, the two agents and the petitioner, his wife and sister-in-law, were all in the dining room when the police officers arrived, and at that time the door leading to the cellar was closed and locked. The agents were then insisting upon their right to go into the cellar. The petitioner was contesting their right to do so. Agent Duckworth announced that if the cellar door was not voluntarily unlocked he would break it down. According to his testimony, he then and there justified his announced intention to break open the door on the ground that he had already seen the illegally possessed liquor in the cellar. The three police officers denied that any such statement was made at the time by Agent

Duckworth, and testified that nothing transpired in their sight or hearing to indicate that the Agents had already inspected the liquors in the cellar.

On the motion for the suppression of the evidence and the return of the liquors it is necessary that the court determine as a matter of fact what were the circumstances of the search and seizure. Steele v. United States, No. 2, 267 U. S. 505, 45 S. Ct. 417, 69 L. Ed. 761. After carefully considering this matter, I find that both the strong weight of the evidence and the reasonable probabilities of the actions of the respective parties compels the finding that the agents had not been voluntarily shown the liquors by Mr. Goodhues before the arrival of the police officers. It seems to me quite improbable that, if the agents had been shown the liquors (which they then and there found in part, in their opinion, not to have been pre-war liquors), they would have allowed the petitioner to again lock the closets and the door leading from the dining room to the cellar. It seems to me that such an action would be quite contrary to the usual course of action of prohibition agents in the efficient performance of their duties. I, therefore, find that the search and seizure in this case was unreasonable and illegal, and it necessarily follows that the evidence must be suppressed. Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409; Amos v. United States, 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654; Silverthorne Lumber Co. v. United States, 251 U. S. 385, 390, 40 S. Ct. 182, 64 L. Ed. 319; Go-Bart Importing Co. v. United States, 282 U. S. 344, 51 S. Ct. 153, 75 L. Ed. 374.

The much more difficult question in the case is what disposition should be made of the liquors so seized. Ordinarily property illegally seized by government officers in violation of the Fourth Amendment is ordered to be returned; but the district attorney contends that the liquors having been unlawfully possessed should not be returned to the petitioner because it is provided by law that they are contraband; that is, section 39 of title 27 of the United States Code, Annotated, provides that there shall be no property rights in intoxicating liquors possessed and held in violation of law.

The general question as to whether intoxicating liquors unlawfully seized in violation of the Fourth Amendment shall be returned to the person from whose possession they were taken has been the subject

of consideration in many federal cases in recent years. It is said that the cases are in hopeless conflict. The principle relied on for the return of the liquors is that the government shall not take advantage of the wrong committed by its officers; and the opposing principle is that the sanctions of the Fourth and Fifth Amendments are gratified when the evidence in a criminal case is suppressed, and there is no duty on the court to return to the possessor an article which is contraband and thus enable him to continue a violation of the law. These general principles are discussed and relied on in many of the cases, but an examination of most of the reported cases dealing with the subject indicates that the real distinction is probably a narrower one. Thus, in the very great majority of these cases where a return of illegally seized liquor has been ordered, *there was no competent evidence before the court, to show that the return of the liquors would necessarily be to an unlawful possession.* And conversely, I think it may be properly concluded that by the very great weight of authority on this question intoxicating liquor, though unlawfully seized by federal agents, will not be returned *where there is affirmative evidence, apart from evidence obtained only by the illegal search and seizure, that the liquors were unlawfully possessed or used.*

In Boyd v. United States, 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746, a distinction was made between papers obtained by an illegal search and contraband obtained as a result of an illegal search, such as counterfeit coins and lottery tickets. And District Judge Westenhaver aptly said in United States v. O'Dowd, 273 F. 600, 602 (D. C. N. D. Ohio, E. D.): "It is not yet held that a thief is entitled to have returned to him stolen goods found in his possession and seized by an officer without a search warrant. It has not yet held that a burglar, a counterfeiter, or a smuggler, has a similar right to the return of the implements and tools of his trade and crime, merely because possession of them was obtained as a result of an unreasonable search and seizure."

In Amos v. United States, 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654, the Supreme Court ordered the return of intoxicating liquor illegally seized; but it is to be noted that the case was not decided under the Prohibition Act (27 USCA), and there was apparently no evidence before the court other than that resulting from the illegal seizure to show that the possession of the liquor constituted a crime.

It has been held by the Circuit Courts of Appeals for the First, Fifth, and Sixth Circuits, that intoxicating liquor shown to have been illegally possessed, although illegally seized, will not be returned. Strong v. United States (C. C. A. 1st) 46 F.(2d) 257, (on certiorari in the Supreme Court, 52 S. Ct. 27, 76 L. Ed. ——); Bourke v. United States (C. C. A. 6th) 44 F.(2d) 371; Voorhies v. United States (C. C. A. 5th) 299 F. 275. In the Second Circuit, in the case of United States v. Specified Quantities of Intoxicating Liquors, 7 F.(2d) 835, illegally seized liquors were returned, but it appeared also that the original possession was lawful; and a similar situation was presented in the same Court in Re Brenner (C. C. A.) 6 F. (2d) 425. In Gallagher v. United States, 6 F. (2d) 758, 759, the same Circuit Court of Appeals said: "We did not decide there [referring to In re Hollywood Cabaret (C. C. A.) 5 F.(2d) 651] and do not decide here, whether or not in such a case it is an answer to the illegality of the seizure that the possession, if restored by the court, would itself be unlawful and a crime."

The question is, therefore, apparently still an open one in the Second Circuit. Two District Court decisions in this circuit are against the return. United States v. Jensen (E. D. N. Y.) 291 F. 668; In re Baldi (E. D. N. Y.) 33 F.(2d) 973.

I cannot find that the question has been decided by the Circuit Court of Appeals for the Third or Fourth Circuits, although in the Third Circuit there is one District Court decision in favor of the return [Petition of Shoemaker (W. D. Pa.) 9 F.(2d) 170], and one against it [United States v. A Quantity Contraband Liquor & Miscellaneous Articles (W. D. Pa.) 47 F.(2d) 321]. And in the Fourth Circuit there is a District Court decision against the return. United States v. Dziadus (N. D. W. Va.) 289 F. 837.

In this District the general subject-matter has been discussed in a very carefully considered opinion by Judge Coleman. See United States v. Kelly (D. C.) 26 F.(2d) 717. But the case presented materially different features from the instant case, in that the seizure there made was from a building not occupied solely as a dwelling house, but partly as a saloon, and the seizure was made under a valid search warrant. The claimant was the wife of an acquitted defendant in a criminal case. She claimed the ownership of the liquor, but the return

to her was refused because she failed to satisfactorily establish her ownership and to affirmatively show lawful possession. At page 719 of 26 F.(2d), the authorities are reviewed and approved to the effect that ordinarily intoxicating liquors unlawfully seized will be returned unless it is found that the return would be tantamount to directing an illegal act.

I have not found any decisions of the Circuit Court of Appeals for the Seventh and Tenth Circuits. In the Eighth Circuit it has been held in Brock v. United States, 12 F.(2d) 370, that illegally seized intoxicating liquor is to be returned *where there was no other evidence except that obtained by the illegal search that the property so taken was contraband or unlawfully possessed.* And in the Ninth Circuit there is a decision to the same effect. Fabri v. United States, 24 F.(2d) 185 (C. C. A. 9th).

But the actual question in the instant case is much narrower than the general question above discussed. Here the illegal search and seizure was of a *dwelling house,* and special considerations are therefore applicable to it. Title 27, section 50, United States Code Annotated, provides in part as follows: "It shall not be unlawful to possess liquors in one's private dwelling while the same is occupied and used by him as his dwelling only and such liquor need not be reported, provided such liquors are for use only for the personal consumption of the owner thereof and his family residing in such dwelling and of his bona fide guests when entertained by him therein; and the burden of proof shall be upon the possessor in any action concerning the same to prove that such liquor was lawfully acquired, possessed, and used."

The district attorney relies upon the last clause of this statutory provision; it being contended by him that it puts the burden of proof on the petitioner to show that the liquor was lawfully acquired, possessed, and used. But this contention assumes that this proceeding is an "action." If it is not, it would seem there is no obligation on the plaintiff to affirmatively show his legality of possession, but on the contrary he is entitled to rely upon the presumption of innocence. In this connection it should be stated that at the hearing there was no satisfactory affirmative testimony on behalf of the petitioner that the liquor in fact had been lawfully acquired, and there was no evidence on the part of the government, other than that obtained by the illegal search itself, to show that the liquor was unlawfully acquired.

It is now the clearly established law that a dwelling house is not always a legal sanctuary for illegal liquor. In Cunard S. S. Co. v. Mellon, 262 U. S. 127, 43 S. Ct. 504, 508, 67 L. Ed. 894, 27 A. L. R. 1306, the court said: " * * * The only instance in which the possession of intoxicating liquor for beverage purposes is recognized as lawful is where the liquor was obtained before the act went into effect and is kept in the owner's dwelling for use therein by him, his family, and his bona fide guests." See, also, Street v. Lincoln Safe Deposit Co., 254 U. S. 88, 41 S. Ct. 31, 65 L. Ed. 151, 10 A. L. R. 1548.

As the possession of liquor in a dwelling house may be either lawful or unlawful, it is thus seen that the exact question now before the court is the narrow one of whether, on petition for return of liquor illegally seized from a dwelling house, the *burden of proof* as to the lawful or unlawful character of the possession is upon the claimant or upon the government. The statute does cast this burden upon the possessor in an "action." Is this proceeding an "action"? The ordinary acceptance of the term "action" in legal procedure is a litigation between two parties. This *proceeding* is certainly not what would ordinarily be termed an "action." It is in the nature of a summary proceeding to correct erroneous administrative activities. It would seem that the expression is therefore not appropriate for this proceeding.

Moreover, there is an even more substantial reason against placing the burden of proof in a case of this kind upon the claimant. Until the *fact of possession* is shown by competent evidence, there is clearly no burden on the petitioner to undertake to show that possession was lawful. If the proceeding were an indictment for unlawful possession, the burden would be on the government in the first place to show the fact of possession. And similarly, if the proceeding were a libel for forfeiture, the government would also have to first show the fact of possession. See United States v. A. Quantity of Contraband Liquor, 47 F. (2d) 321 (D. C. W. D. Pa.). And in such proceedings the evidence obtained by an illegal search would not be admissible; and, unless the government produced some evidence apart from that obtained by the illegal search, the person from whom the liquors were seized could not be called upon to

establish the innocence of his possession. And in my opinion there is no greater obligation on the claimant in this proceeding to affirmatively show lawful possession than in the case of an indictment or libel for forfeiture. This view of the matter has been taken in a number of fully considered cases. Dickhart v. United States, 57 App. D. C. 5, 16 F.(2d) 345; United States v. Descy (D. C. R. I.) 284 F. 724; United States v. Vigneaux (D. C. Mass.) 288 F. 977; United States v. Maggio (D. C. W. D. N. Y.) 51 F.(2d) 397. In Geraghty v. Potter, 5 F.(2d) 366 (D. C. Mass.), liquor illegally seized in a near beer saloon was ordered to be returned after very full consideration of the subject in which the distinction between the particular case under consideration and a seizure from a dwelling house was noted. The case was appealed to the Supreme Court, where it was remanded to the District Court *per stipulation of counsel*, with directions to vacate the judgment and enter an order for the destruction of the liquors.

I am aware that there are some cases that have taken the opposite view, notably, Voorhies v. United States (C. C. A. 5th) 299 F. 275, but I think the view above expressed is more consistent with the recent decisions of the Supreme Court on illegal search and seizure.

In Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 S. Ct. 182, 183, 64 L. Ed. 319, Mr. Justice Holmes, speaking for the court, said: "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it in the way proposed."

In Go-Bart Importing Co. v. United States, 282 U. S. 344, 357, 51 S. Ct. 153, 158, 75 L. Ed. 374, Mr. Justice Butler for the court said: "The Amendment is to be liberally construed and all owe the duty of vigilance for its effective enforcement lest there shall be impairment of the rights for the protection of which it was adopted."

 The next question is whether there is any legally competent evidence in this case to show that the seized liquors were in fact unlawfully possessed. The government offered some evidence tending to show that a part of the seized liquor could not have been legally acquired. But, as already stated, all of this evidence originated from information obtained by the illegal search. The government also called Mr. Goodhues as a witness and desired to ask him questions regarding his acquisition of the liquor, but he declined to testify with regard thereto, availing himself of his privilege under the Fifth Amendment. On the other hand, there is some affirmative testimony on behalf of the petitioner tending to show that very probably at least the greater part of the liquor had been lawfully acquired prior to the National Prohibition Act (27 USCA). The petitioner had been in the restaurant business selling liquor prior to war time prohibition and to the personal knowledge of his attorney, Mr. Elly, had had a very large quantity of liquor ever since his restaurant business was discontinued, which Mr. Elly understood to have been part of his stock in trade, which was removed to his home after the restaurant was closed, and that this stock had been gradually diminishing. The evidence produced by the government as a result of the illegal search was objected to by counsel for the petitioner. If it is legally competent, then it would follow that that part of the liquor shown to have been unlawfully possessed should not be returned. After a careful consideration, I have reached the conclusion that evidence so obtained in a proceeding of this character is not legally competent to show unlawful possession. It was so held in Fabri v. United States, 24 F.(2d) 185, 186 (C. C. A. 9th), where the court said: "And unless we resort to the facts disclosed by the search there is no ground at all on which to invoke the presumption of section 33. Admittedly the rule is well established that evidence thus obtained cannot be used in prosecuting a criminal charge, and the reasons underlying it would seem to be equally applicable to a case like this, where, in effect, forfeiture is sought of property belonging to the party whose rights have been invaded by a wrongful search and seizure. We think that, both upon principle and the weight and trend of the decided cases, the view must be taken that where, as here, upon an unlawful search of a dwelling house, government agents seize property the possession of which may or may not have been unlawful, the person from whose possession it was wrongfully taken is prima facie entitled to its res-

toration, and that the government can make successful resistance to an appropriate petition for its return only by showing affirmatively, by proofs other than those obtained as a result of the unlawful search, that the property was, at the time of its seizure, being used in the commission of crime."

Brock v. United States, 12 F.(2d) 370 (C. C. A. 8th), is to the same effect; also Castro v. United States, 23 F.(2d) 263 (C. C. A. 1st). On this particular point I do not think the Castro Case is necessarily disapproved in the later Strong Case in the same circuit, 46 F.(2d) 257. In Bourke v. United States, 44 F.(2d) 371, 372, (C. C. A. 6th), it was said: "At the trial, no objection was made to the introduction of the evidence showing the circumstances of the seizure of the liquor and the description of its appearance and condition when found. We are, therefore, not required to consider to what extent, if at all, this evidence might have been inadmissible, because resulting from an unlawful search."

If the consideration of the cases is limited to those where liquor has been unlawfully seized from a *dwelling house*, it is found that the weight of authority supports the proposition that the liquor should be returned. Cases in federal appellate courts so holding are Castro v. United States (C. C. A. 1st) 23 F.(2d) 263; Fabri v. United States (C. C. A. 9) 24 F.(2d) 185; Dickhart v. United States, 57 App. D. C. 5, 16 F.(2d) 345; Brock v. United States (C. C. A. 8th) 12 F.(2d) 370 (where the seizure was from a druggist having government permit). The appellate decisions holding to the contrary are, I think, all distinguishable, with one exception. In Bourke v. United States (C. C. A.) 44 F.(2d) 371, while the liquor was returned, it appears from the quotation above made from that case that the crucial question of the admissibility of evidence obtained through unlawful search was not considered; that is, there was in that case affirmative competent evidence to show the unlawful possession. In Strong v. United States, 46 F.(2d) 257 (C. C. A. 1st), the seizure was not made from a private dwelling, but from a cellar in a barn. The proceeding was a libel for forfeiture, and the claimant's answer did not deny the allegations of the libel that the liquors were unlawfully possessed. Voorhies v. United States, 299 F. 275 (C. C. A. 5th), is, I think, not distinguishable. It would unduly prolong this opinion to review the District Court cases on this particular point of seizure from dwelling houses. It is sufficient to say that in many of the cases the liquor has been returned. Reference may be made, however, to the latest case on the subject which I have seen. United States v. Maggio (D. C., W. D. N. Y.) 51 F.(2d) 397. A few cases have considered and refused a return of apparatus for the unlawful manufacture of liquor illegally seized from a dwelling house, such as a still. Such cases are probably distinguishable because the things seized, on their face, carry convincing evidence of their unlawful possession. See, for illustration, United States v. Rykowski (D. C. S. D. Ohio) 267 F. 866, and Bourke v. United States, 44 F.(2d) 371 (C. C. A. 6th).

I, therefore, reach the conclusion that to give proper effect to the Fourth and Fifth Amendments and the provisions of the National Prohibition Act, the liquors illegally seized in this case must be returned. But, to avoid any possible misunderstanding as to just what is decided, I will say again that the basis of the decision is that the illegal seizure was made from a dwelling house, and there is no competent evidence before the Court that the liquor was necessarily unlawfully possessed, and the decision is definitely limited to that situation. It would not apply to the requested return of liquor illegally seized from a place other than a dwelling house, as, for instance, from an automobile or other place where there could be no presumption whatever of lawful possession. And, as already above stated, it is my opinion that the court cannot be called upon to affirmatively act in restoring property to a necessarily unlawful possession when this is shown by competent evidence.

I will sign an order suppressing the evidence obtained by the illegal seizure and for its return to the petitioner.

NOTE.—On October 26, 1931, the petition for certiorari in the Strong Case was by order of court "dismissed per stipulation of counsel, and mandate granted on motion of Mr. Solicitor General Thacher in that behalf." It was stated in the public press that the seized liquor would be returned, as the Solicitor General did not wish the government to take advantage of the clearly illegal search in that case.