UNITED STATES, Appellant

v

LENARD D. CADY, Lance Corporal, U. S. Marine Corps, Appellee

No. 26,665

July 20, 1973

*Captain Daniel R. Remily,* USMCR, argued the cause for Appellant, United States. With him on the brief was *Lieutenant Colonel G. L. Bailey,* USMC.

*Captain D. A. Higley,* USMC, argued the cause for Appellee, Accused.

## OPINION OF THE COURT

DUNCAN, Judge:

This case is before us on certification by the Acting Judge Advocate General of the Navy on the following question:

Was the United States Navy Court of Military Review correct as a matter of law in deciding that the heroin found on the accused's person was inadmissible in evidence as a result of an illegal search and seizure?

The record of trial reflects that at about 10:00 p.m. on April 17, 1972, Sergeant Macmasters, the company police sergeant, became aware of a strange odor in the barracks. It was a "sweet smell," a "weird smell." Macmasters informed Sergeant Weaver, the company gunnery sergeant, of the unusual odor and together they went through the barracks in an effort to locate the source. After checking in the squad bay and the head, they arrived at the laundry room. Sergeant Weaver entered and Macmasters remained outside.

Weaver testified that as he entered the laundry room he observed the appellant standing at a wash rack. "Cady turned and looked at me and jumped and appeared to shove something into his pocket." A small spoon similar to one used in mixing drinks was on the drainboard in front of the sink where the appellant was standing. There was no laundry in the room. According to Weaver it was not normal for anybody to be in the laundry room at that particular time of the day. Macmasters, who was in charge of the police (clean-up) detail to which the appellant was assigned, testified to the contrary on this latter issue. The testimony of record also indicates that the appellant had a Pepsi can in his hand at the time.[1]

Weaver directed appellant to step outside the laundry room. He described the appellant's movements as slow and noted that the appellant's eyes appeared to be bloodshot. Since Weaver was aware of a drug problem within the company, the appellant's unexplained presence in the laundry room, his reaction at Weaver's entrance, and his physical appearance caused him to be suspicious. Once outside and without any prefatory warning, Weaver said to the appellant: "Cady, you haven't been using drugs in there, have you." The observed physical reac-

---

[1] Appellant testified that he was goldbricking in the laundry room. "Just drinking a soda and sitting on the wash basin, sir."

tion of the appellant to this question was excluded by the military judge.[2] Thereafter, the appellant was directed to accompany Weaver to the office of the commanding officer. Weaver related the foregoing matters to Lieutenant Mills, the commanding officer. He did not advise him that he had seen the spoon on the drainboard but did describe the appellant's physical reaction to his question.

Lieutenant Mills asked the appellant, who had been waiting in the outer office, to come in. He then advised the appellant that he was suspected of possessing dangerous drugs, informed him of his rights under Article 31, and requested permission to search his person. Specifically, Mills testified:

> I informed him that I was going to ask his permission to search him and that he didn't have to give me permission. If he said no, then I would have to use my authority as Commanding Officer to search him, but that it was his decision to allow me to search him or not.

On cross-examination, Mills related:

> I told him that I would like to search him. I told him that I needed his permission to search him but that he didn't have to give it to me and that if he didn't give it to me, I was going to search him because I thought that I had probable cause.

.    .    .    .    .

I told him that he had two choices and those were that he either gave me his permission or I would search him because I had probable cause to do so.

Mills testified that when the appellant consented[3] to be searched he was directed to empty everything from his pockets and place the material on the desk.[4] A matchbook was the only thing forthcoming. Mills then proceeded to pat the appellant's pockets. As Mills was in the process of unbuttoning the rear pocket in which he had felt something, "he [Cady] told me that he refused to give me his permission to search him. . . . I told him that it was my prerogative to continue the search and that I was going to." The heroin, the subject matter of the question before us, was extracted from this pocket by Lieutenant Mills.

At trial, the admissibility of the heroin was lengthily contested. Initially, trial counsel informed the court that the Government intended to argue on three bases: "incident to an apprehension . . . consent . . . [and] probable cause in the mind of Lieutenant Mills to search the person of the accused." After the presentation of evidence, trial counsel stated: "Your Honor, we feel that at this stage of the game, I think we are talking about search as to apprehension and consent search." At the request of the military judge, trial counsel asserted

---

[2] Macmasters later testified that the appellant replied "no" to the question. The military judge announced that he would disregard this testimony.

[3] Implicit in the very nature of the term "consent" is the requirement of voluntariness. Faced with Lieutenant Mills' "two choices" it is at least doubtful whether the appellant's consent was freely and voluntarily given. In Bumper v North Carolina, 391 US 543, 548–49 (1968) (footnotes partially omitted), the Supreme Court held:

> When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. A search conducted in reliance upon a warrant

cannot later be justified on the basis of consent if it turns out that the warrant was invalid.[14]

14. "Orderly submission to law-enforcement officers who, in effect, represented to the defendant that they had the authority to enter and search the house, against his will if necessary, was not such consent as constituted an understanding, intentional and voluntary waiver by the defendant of his fundamental rights under the Fourth Amendment to the Constitution." United States v Elliott, DC, 210 F Supp 357, 360.
See also Schneckloth v Bustamonte, 93 S Ct 2041 (1973).

[4] The can of Pepsi, which the appellant had in his hand when found in the laundry room, was on the Lieutenant's desk during the search.

that the apprehension was effected "[w]hen Staff Sergeant Weaver took the accused down to the Company Commander's office." In argument, defense counsel contended that: (1) there was insufficient probable cause on which to base an apprehension and that a search on that ground was illegal; and (2) assuming that consent to search was given, it was withdrawn clearly and positively prior to the finding of the heroin. The military judge denied the Government's theory of search incident to a lawful apprehension but held the heroin admissible in evidence as having been obtained as the result of a consensual search.

The Court of Military Review determined that:

The first issue squarely presented by these facts is whether consent, once given by an accused, is revokable by such accused prior to known discovery of suspected items sought. We hold such consent to be revocable.

. . . . .

We do not find these facts and circumstances would justify a prudent man in concluding that an offense had been or was being committed and accordingly under the circumstances, probable cause to conduct this search on the part of the Commanding Officer did not exist.

On the facts before us in this case, we cannot say that the Court of Military Review's conclusion regarding probable cause is erroneous. Assuming, *arguendo,* that the appellant freely and voluntarily consented to be searched, see note 3 *supra,* the sole question before us then is whether the court was correct in its holding that consent to search, once given, is revocable by an accused prior to discovery of the suspected items. As noted by the Court of Military Review, this is a question of first impression in military law and there is little authority in other jurisdictions precisely in point.

The Government contends that once the protected right to privacy has been " 'lawfully destroyed,' " the principal purpose of the Fourth Amendment in the prevention of arbitrary intrusions into an individual's privacy has been

satisfied. A subsequent attempt to retract the waiver does not effect the legality of the search. Hence, counsel assert, "an accused, in legal effect, cannot revoke his consent after the search has commenced."

Government counsel acknowledge that they were able to locate only two cases directly in point, both of which, according to their briefs, support their position. Smith v Commonwealth, 197 Ky 192, 246 SW 449 (1923), and People v Kennard, 488 P2d 563 (Colo 1971). They also called attention to People v Botos, 104 Cal Rptr 193, 27 Cal App 3d 774 (1972), and People v Shelton, 36 Cal Rptr 433, 388 P2d 665 (1964), which *indicate* that a suspect *may* withdraw his consent. However, under the facts in each case, they contend, it was clear that the withdrawal would have occurred or did occur *before* the search consented to had commenced.

Counsel for Cady alleges that "[c]learly the accused may withdraw his consent to a search of his person. People v Martinez, 259 Cal App 2d Supp 943, 65 Cal Rptr 920, 922 (App Dept L A Co 1968)." He also cites as authority for this proposition People v Shelton, supra; People v Botos, supra, "('actions inconsistent with consent may act as a withdrawal of it')"; and People v West, 3 Cal 3d 595, 602, 91 Cal Rptr 385, 388, 477 P2d 409 (1970) "('defendant did not withdraw this consent until the officer discovered the marijuana')."

In Smith v Commonwealth, 246 SW at 451, the following is noted:

In Bruner v Commonwealth, 192 Ky 386, 233 SW 795, we held that one who voluntarily agrees that his premises may be searched by a peace officer cannot thereafter complain that the search was made without a warrant. And, manifestly, it would be but an amplification of the above principle to declare that, where one voluntarily consents to a search of his premises, vehicle, or other property by a peace officer without a search warrant, he will not, after such search has commenced, and while it is in progress, be permitted to withdraw such consent in order to prevent the discovery by the peace officer of evidence that might

conduce to prove him guilty of the offense charged in the search warrant.

In People v Kennard, 488 P2d at 564–65, the court, without citation of authority, made the observation that "[a]fter consent has been granted to conduct a search, that consent cannot be withdrawn." The court went on to hold:

The facts indicate that the police had probable cause to make an arrest prior to the time that a formal arrest was made. Clearly, the defendant's arrest was supported by probable cause, and the articles seized incident thereto were properly admitted into evidence. [Citations omitted.]

The court in People v Martinez, 65 Cal Rptr at 922, in holding that a consent to search may be revoked, unanimously stated the following:

The serious questions presented in the case under consideration are whether a voluntary consent to a search may be limited in scope and whether a voluntary consent may be withdrawn before the search is completed. Our answer to both questions is in the affirmative.

Consent to search a barn does not authorize search of a cellar not connected with the barn. (Strong v United States (1 Cir, 1931) 46 F2d 257, 79 ALR 150.) Where on request for permission to search an automobile and a query as to whether defendant possessed any liquor, the defendant replied "search me", contraband found in the automobile was held to be the result of an unauthorized search, the search authorized being merely a personal search. (Witt v Commonwealth (1927) 219 Ky 519, 293 SW 1072.) In State v Johnson (Wash 1967) 427 P2d 705, defendant gave permission to search the trunk only and the contraband was found by a search of the inside of the car. The court held it was error to admit such evidence.

The California case of People v Ross (1962) 206 Cal App 2d 542 at 545, 24 Cal Rptr 1, where after permitting a search of inside of car defendant objected to search of the trunk, is not contrary to these cases as it was there held the search was incident to a valid arrest.

We see no reason to hold that a consent to search must be unlimited in scope.

Neither do we find any reason to hold that a consent, once given, may not be withdrawn. It is true that the contrary view has been expressed. (See Smith v Commonwealth (1923) 197 Ky 192, 246 SW 449.) We do not believe that this is the present law, particularly in view of the explicit statement in the *Miranda* case [5] that a defendant consenting to answer police questioning without a lawyer may withdraw such waiver at any time. We see no reason, in this respect, to distinguish between withdrawal of waiver of legal representation during investigation and withdrawal of consent to search once given.

People v Shelton, 388 P2d at 668:

The search cannot be justified on the ground that Shelton consented to it. It is true that one of the officers testified that Shelton responded, "All right, go ahead," when the officer suggested they go to the apartment and take a look. The fact that Shelton was under arrest at the time, however, and his subsequent refusal to assist the officers in gaining access to the apartment establish that his apparent consent was not voluntarily given. (Castaneda v Superior Court, 59 Cal 2d 439, 442–443, 30 Cal Rptr 1, 380 P2d 641; People v Haven, 59 Cal 2d 713, 720, 31 Cal Rptr 47, 381 P2d 927; see also People v Gorg, 45 Cal 2d 776, 782, fn 2, 291 P2d 469.)

People v Botos, 104 Cal Rptr at 196:

Although actions inconsistent with

[5] The court in *Martinez* had previously stated at 922:

Defendant contends that a consent to a search is invalid unless preceded by a Miranda type warning as to the right to withhold consent. While this argument has a certain appeal as be-ing plausible and consistent, it has been decided adversely to defendant's position. (People v Smith (1966) 63 Cal 2d 779, 48 Cal Rptr 382, 409 P2d 222; People v Dahlke (1967) 257 Cal App 2d ——, 64 Cal Rptr 599.)

consent may act as a withdrawal of it, these actions, if they are to be so construed, must be positive in nature. Thus, if a suspect who has given consent to search his car's trunk throws the key in some bushes, his consent is withdrawn (People v Escollias, 264 Cal App 2d 16, 18, 70 Cal Rptr 65). Similarly, if a search is agreed to, but the suspect later refuses to cooperate with the police, there is no consent (People v Shelton, 60 Cal 2d 740, 745, 36 Cal Rptr 433, 388 P2d 665).

Our research has failed to reveal any additional cases bearing directly on the issue before us. Smith v Commonwealth, supra, was relied upon in 47 Am Jur Searches and Seizures, § 71, for the proposition that "[a]fter the commencement of a search by voluntary consent, the consent may not be withdrawn." That statement, however, is not repeated in the revision of that authority, 68 Am Jur 2d Searches and Seizures, §§ 46–53, 100, 101, 126; nor, is any reference made therein to Smith v Commonwealth, supra, or to the holding in People v Martinez, supra, that consent, when given, may be withdrawn before the search is completed.

"A consent search is reasonable only if kept within the bounds of the actual consent."[6] In United States v Dichiarinte, 445 F2d 126, 129, n 3 (7th Cir, 1971), citing Honig v United States, 208 F2d 916, 919 (8th Cir, 1953), the court stated:

> In our view, consent is a waiver of the right to demand that government agents obtain the authorization of a warrant to justify their search; *and the need for a warrant is waived only to the extent granted by the defendant in his consent.* [Emphasis added.]

The Supreme Court, in the very recent case of Schneckloth v Bustamonte, supra, held that while the Government need not prove that one giving permission to search knew that he had a right

to withhold his consent, *cf.* Miranda v Arizona, 384 US 436 (1966); People v Martinez, supra, it must demonstrate that the consent was in fact voluntarily given. It logically follows, therefore, that since what is voluntarily given may be limited in scope, United States v Dichiarinte, supra at 130 n 4,[7] it may also be withdrawn before the search has begun or while it is in progress. *Martinez,* supra, *Botos,* supra, and *Shelton,* supra. See also United States v Dichiarinte, supra at 128. It is also the teaching of Miranda v Arizona, supra. If consent to be interrogated without the presence of an attorney may be withdrawn at any time, can it seriously be contended that consent to search may not be withdrawn, since the essential factor in each instance is voluntariness? We think not. In our opinion, withdrawal of a previously given consent to search is no more than a "demand that government agents obtain the authorization of a warrant to justify their search." United States v Dichiarinte, supra at 129 n 3.

The certified question is answered in the affirmative.

Chief Judge DARDEN concurs.

QUINN, Judge (dissenting):

I incline to the view that withdrawal of a consent to search when a police officer is in the middle of a physical movement that would uncover incriminating evidence does not make completion of the action illegal. The constitutional prohibition is against unreasonable search. It seems to me not to be unreasonable for an enforcement officer to complete a particular physical movement when the beginning of that movement was with consent. It also seems to me that the analogy of withdrawal of consent to search to an accused's right to remain silent after he has consented to custodial interrogation is inappropriate in the context of this case. The right to remain silent belongs to the accused and is exercised solely by him. The prohibi-

---

[6] 68 Am Jur 2d, § 100.

[7] The fact that the defendant submitted to a degree of intrusion upon his privacy by permitting the agents to enter his home and rummage through his personal property does not mean that

the much greater intrusion of his privacy resulting from government agents' reading his personal papers must automatically be allowed. *See* Chimel v California, 395 US 752, 766–767 n 12, 89 S Ct 2034, 23 L Ed 2d 685 (1969).

tion against unreasonable search is directed against the Government agent, and the constitutionality of his action is judged on the basis of the objective circumstances confronting him. Here, Lieutenant Mills was in the process of removing the packet of heroin from a rear pocket of the accused's trousers when the accused withdrew his consent. I am not at all convinced that it was unreasonable, and, therefore, unlawful, for Lieutenant Mills to complete his action.

See United States v Legato, —— F2d —— (5th Cir, June 14, 1973).

Apart from the question of consent, I am satisfied that the information known to Lieutenant Mills justified his statement to the accused that he "had probable cause" to search for drugs. I would, therefore, answer the certified question in the negative, and return the record of trial to the Court of Military Review for further review.