Marsharr,1
 
 CL J.
 

 delivered the onini.on of the Court as follows :
 

 The ship Richmond, ah American registered vessel, sailed from Philadelphia in ballast, in December, 1809, with a clearance for New York, but proceeded to Ports, mouth in Great Britain, where she arrived in 1810. ‘ She made two voyages to Amelia island in East Florida, during the second of which she was seized in St. Mary’s river bv gun-boat N „ 62, January 14th, ±812, and .libelled in the district Court of Georgia, for violating the act passed the 28 th of June,
 
 1809,
 
 for amending the non-
 
 *103
 
 intercourse law. The Richmond was condemned in both the district and circuit Courts, and from their sentence the Claimants'have appealed to, this Court.
 

 The law does •not connect tliattrespass, with the sub-^-the'eivü authority, tmt epurt, so as to annul-the that Court*gainst the -vee-
 

 The Claimants contend,
 

 1» That the vessel was not liable to forfeiture.
 

 2. That the seizure was made within-the territory of Spain, and that all proceedings founded thereon are void.
 

 When the Richmond sailed from Philadelphia, commercial intercourse, between.the ports of Great Britain, and those of the United States, was permitted. But'the act of, the 28th of June; 1809, to/, i 0,
 
 p. is,
 
 enacts, «mo ship or. vessel bound to a foreign port or. place with -« which'commercial'intercourse lias, been or may be thus « permitted, except, &c. shall be allowed to depart unless «the owner or owners, consignee or factor of such ship « or vessel shall, with the master, have; given bond, «one or more, sureties,-to-the ..United States,, in a sum « double the value .of thé vessel and.cargo, that the ves- « sel shall not proceed .to any poj-t .or piare with which « commercial intercourse.is hot thus permitted, nor be1 « directly nor indirectly engaged during the voyage in « any trade with, such port or place.” if a vessel shall depart without having gWen such bond, thó vessel w ith her cargo are declared to be wholly forfeited,
 

 It is contended that this act does not apply to vessels departing from the United States to a. permitted pbH, i« jballast.
 

 The art is certainly not expressed with all the jireei, sion that could be, wished. The.case contemplated.by the legislature most probably w as that of a vessel sailing ivith a cargo ; but there is reason 1o Vlieve that a vessel departing in ballast also, was w ithin the meaning and intent of the law.* The. bond is provided to prevent a breach of the existing restrictive laws by a Vessel clearing out or sailing for a permitted port, but actually pro-, ceeding to a prohibited port. This might be done by a. vessel with or without a cargo; and the condition of the bond would be violated, in its letter as well as spirit, by
 
 *104
 
 the vessels sailing without the cargo to a prohibited port. The Court understands the law, then, directing a bond to be given in double the value of the vessel and cargos to apply to the cargo if there be a eargo, but to the vessel only if there be no cafgo.
 

 The seizure of an American vessel within the territorial jurisdiction of a foreign power, is certainly an of-fence against that power, which must be adjusted between the two governments. This Court can take no cognizance-of it j and the majority, of the Court is of. opinion that the law does not connect that trespass, if it be one, with the subsequent seizure by the civil authority, under the process of the District (Court, so as to annul the proceedings of that Court against the vessel. One judge, who does not concur in this opinion, considers the testimony as sufficient to prove that the .Richmond, when first seized by the gun-boat, was within the jurisdictional limits of the United.States.
 

 The sentence is affirmed with costs.