## THE UNDERWRITER.

(District Court, D. Connecticut. June 11, 1925.)

No. 2839.

1. **Admiralty ⊂⟹65—Exceptions perform functions of demurrer.**

In admiralty, exceptions perform the functions of a demurrer, and the pleadings are very liberally construed.

2. **Admiralty ⊂⟹23—Libel for forfeiture of vessel for violation of statute must be based on prior seizure.**

The jurisdiction of a federal court, sitting as a court of admiralty, in case of a libel of information for forfeiture of a vessel charged with violation of a federal statute, must be based on an initial seizure made prior to the filing of the libel.

3. **Courts ⊂⟹21—Act necessary to vest jurisdiction must be lawfully done.**

It is a general principle of law that, if a thing must be done in order to attach jurisdiction, it must be lawfully done.

4. **Admiralty ⊂⟹23—To give jurisdiction of libel for forfeiture, vessel must have been seized by government agents.**

The seizure of a vessel, in order to give a court of admiralty jurisdiction of a libel of information. for its forfeiture, must have been made by agents of the government, acting for a government purpose.

5. **United States ⊂⟹40—Act by officer in excess of authority is not act of the government.**

When an agent of the government acts in excess of the authority vested in him, his act from a legal standpoint is no longer the act of the government.

6. **Admiralty ⊂⟹23—Seizure of vessel by Coast Guard held beyond its authority.**

Under Tariff Act of 1922, § 581 (Comp. St. Ann. Supp. 1923, § 5841h), which authorizes the Coast Guard to make seizures of vessels "at any place in the United States or within four leagues of the coast of the United States," the seizure of a vessel 34 miles from the coast was beyond its authority, was not an act of the government, and cannot give jurisdiction to a court of admiralty of a libel of information for forfeiture of the vessel.

In Admiralty. Libel of information by the United States for forfeiture of the American steam tug Underwriter. On exceptions to libel and stipulated facts. Exceptions sustained, and libel dismissed.

John Buckley, U. S. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn., for the United States.

Louis Halle, of New York City, for owner.

THOMAS, District Judge. The questions to be determined here are presented on the exceptions filed to the libel of information.

The record in this case shows that the steam tug Underwriter was seized by officials of the United States Coast Guard Service on the 7th day of December, 1924. Thereupon her owner moved this court for an order directing the release and return of the tug. While this motion was pending, the United States filed a libel of information, on which there duly issued a warrant directing the seizure of the tug.

In view of this situation, the motion for the release of the tug was abandoned, upon the suggestion of the court contained in a memorandum filed on March 13, 1925. Therein it was suggested that counsel stipulate all the facts and agree that the detention of the tug be continued by virtue of the libel. A stipulation as to the facts was thereupon entered into between the libelant and the owner, which is to be read in connection with the libel. The owner thereupon filed exceptions to the libel, and it is upon the record thus presented that the parties have agreed that final disposition of this cause be made.

It appears, then, that the conceded facts show that the tug Underwriter is an American boat registered for coastwise trade only, and that on September 7, 1924, she was apprehended by the United States Coast Guard ship Cassin at a point 34 miles S. E. S. 147° true from Block Island Southeast Lighthouse, latitude 40° 40′, longitude 71° 08′, laden with 811 cases of whisky having an alcoholic content in excess of one-half of 1 per cent. by volume. It also appears that at the time of the seizure the Underwriter was in charge of one John J. O'Brien and a crew of 13 men, and that no permits of any kind authorizing the boat, the master, or the crew to carry intoxicating liquors, were found on the tug or on any of the persons aboard. Immediately upon the seizure, the Underwriter was turned over to the collector of customs in New London, and by virtue of the stipulation this custody was continued in the United States marshal for this district.

Upon these facts the libel charges a violation of sections 593 and 594 of the Tariff Act (Comp. St. Ann. Supp. 1923, §§ 5841h12, 5841h13, 5841h14), section 3450 of the Revised Statutes of the United States (Comp. St. § 6352), sections 586 and 587 of the Tariff Act (Comp. St. Ann. Supp. 1923, §§ 5841h5, 5841h6), section 26 of title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½mm), and section 4377 of the Revised Statutes (Comp. St. § 8132). The gist of these charges is that the tug was engaged in smuggling, in

violating the Prohibition Law, and, in addition thereto, had gone foreign.

To the libel as filed, and as modified by the stipulated facts, the owner claimant filed six exceptions. The first exception maintains that the seizure, having been made 34 miles from the United States coast, was without warrant in law and that all evidence obtained as a result of the same is inadmissible. The second exception goes specifically to the first ground of forfeiture, and maintains that no facts are alleged sufficient to make out a charge of smuggling. The next exception attacks the second ground of forfeiture, to wit, the conveying of intoxicating beverages, upon the ground that the offense, if any, was committed at a distance more than four leagues removed from the United States. The third cause of forfeiture, charging specifically the violation of the National Prohibition Act, is excepted to upon the ground that the offense was not committed within the territory of the United States. The fourth cause of forfeiture, charging that the tug was employed in trade other than that for which she was licensed, is excepted to upon the ground that no facts are set forth in the libel to show that the trade for which the vessel was licensed was different from the trade for which she was employed at the time of the seizure. The fifth ground of forfeiture is based upon the charge that the ship had gone foreign, and is excepted to upon the ground that no facts are alleged in the libel which show that at the time of the seizure the vessel was engaged in any trade other than a coastwise trade.

[1] At the outset of this inquiry, we are confronted with a challenge to the jurisdiction of the court. It is true that challenge is somewhat inartificially framed, but the exception in which it is contained is directed to all the grounds of forfeiture stated in the libel. In admiralty, the exceptions to the libel perform the functions of a demurrer, and pleadings in admiralty are very liberally construed. Indeed, the problem respecting jurisdiction is the dominating theme of the briefs both of the libelant and of the claimant to such an extent that the libelant conceded and stipulated that the briefs submitted at the time of the pendency of the motion to discharge the vessel on the initial seizure should be considered as the briefs upon the issues joined by the libel and the exceptions thereto.

It is the contention of the owner that the seizure, having been made by officials of the coast guard at a distance more than four leagues removed from the coast, was unlawful, and that all proceedings based thereon and dependent thereon are null and void. This contention requires that we examine the basis of the admiralty jurisdiction exercised by this court in cases of libels of information for the forfeiture of goods and vessels, for a violation of the laws of the United States.

[2] Ever since the decision in the case of the Brig Ann, 9 Cranch, 289, 3 L. Ed. 734, it has been settled law that the jurisdiction of the federal court sitting as a court of admiralty in the case of a libel of information for the forfeiture of a vessel charged with the violation of a federal statute must be based upon an initial seizure made prior to the filing of the libel. This principle, formulated over 100 years ago, seems never to have been questioned. It has been consistently followed, and, as we shall show, must be considered as a subsisting rule of admiralty jurisdiction. It was followed in the case of The Fideliter, Fed. Cas. No. 4,755, decided in the Circuit Court in Oregon in 1870.

In that case a libel of information had been filed for violation of the navigation laws. Judge Sawyer said: "It is insisted that an open, visible seizure by an officer of the government or other person authorized by law to seize, must precede the commencement of the judicial proceedings, and that such seizure prior to the filing of the libel must be alleged therein, and proved on the trial. Upon an examination of the authorities, I find this to be the law as settled by the decisions of the federal courts, including the Supreme Court of the United States. I shall only cite the authorities, without a restatement of the reasoning upon which the decisions rest."

The court, after citing its authorities, proceeds as follows: "The twenty-second rule in admiralty, prescribed by the Supreme Court, requiring the libel to state the place of seizure, is framed in strict accordance with the law, as thus settled by the courts."

In the case of United States v. The Frank Silvia (C. C.) 45 F. 641, which was a libel of information for violation of the navigation laws, Judge Sawyer said: "The point is made that the District Court does not appear to have acquired jurisdiction, before filing the libel, by a seizure of the vessel by the collector, or other executive officer of the government. There is no allegation that any seizure was made, and, I understand, none was, in fact, made. A seizure of the vessel before filing the libel is necessary to give jurisdiction. This has been settled by numerous cases. * * * The first thing to be

done is for some of these officers to *seize* the vessel, as smuggled goods, for instance, are seized, thereby acquiring jurisdiction. Having thus acquired jurisdiction, by seizure by the proper officers, the proceedings may be had.in the District Court, to enforce the penalties arising under section 4499."

The language used by Mr. Justice Story in The Ann, supra, does possibly suggest the question as to whether this principle of jurisdiction still holds. That decision seems to have been based upon an interpretation of the language of the Judiciary Act of 1789 (1 Stat. 73). As construed by the court, that language required an initial seizure in order to determine the forum in which the libel was to be filed, and such a determination of necessity had to be predicated upon a seizure at some given point.

The language of section 24 of the present Judicial Code (Comp. St. § 991) provides that "the District Courts shall have original jurisdiction: * * * First. * * * Second. * * * Third. Of all civil causes of admiralty and maritime jurisdiction."

However, in effect the same language which was the subject of construction in The Ann Case, is to be found in section 45 of the present Judicial Code (Comp. St. § 1027), which provides: "Proceedings on seizures made on the high seas, for forfeiture under any law of the United States, may be prosecuted in any district into which the property so seized is brought and proceedings instituted. Proceedings on such seizures made within any district shall be prosecuted in the district where the seizure is made, except in cases where it is otherwise provided."

I am of the opinion that the same reasoning which led Mr. Justice Story to conclude that the admiralty jurisdiction of the federal courts in the case of a libel of information depended upon an initial seizure is applicable to the proceedings under the present Judicial Code, and that no legislative purpose appears on the face of the Judicial Code to annul or abolish this ancient principle of maritime jurisdiction. Indeed, the language of rule 21 of the General Admiralty Rules of the United States Supreme Court is persuasive, and leads to the conclusion that this principle of jurisdiction is recognized as subsisting by that high tribunal.

That rule in part reads: "All informations and libels or information upon seizures for any breach of the revenue, or navigation or other laws of the United States, shall state the place of seizure, whether it be on land or on the high seas, or on navigable waters within the admiralty and maritime jurisdiction of the United States, and the district within which the property is brought and where it then is."

In conformity with this rule, the libel at bar does, in fact, allege all the facts concerning the seizure and present custody of the vessel. It being thus established that an initial seizure by the government must constitute the predicate of admiralty jurisdiction in the case of a libel of information, we now proceed to determine whether or not such a seizure must be lawfully accomplished.

Peculiarly enough, this question seems never to have received judicial consideration in any reported case. It is true that in the matter of The Richmond, 9 Cranch, 102, 3 L. Ed. 670, the question almost came within the purview of the Supreme Court. In that case, an American ship was seized by an American gunboat within the territorial waters of a foreign power for violation of the Act of June 28, 1809 (2 Stat. 550). The owner thereupon contested the jurisdiction of the admiralty court, upon the ground that the seizure had not been lawfully accomplished. The contention, however, was dismissed, upon the ground that the illegality consisted in the breach of a principle of international comity; that the gunboat indeed had no right, under principles of international law, to make a seizure within the territorial waters of a foreign power; and that, while the matter was undoubtedly one to be adjusted by the diplomatic representatives of both countries, it in no wise touched the jurisdiction of the court.

In that case, however, there really was no question as to the competency of the gunboat to make the seizure from the standpoint of the municipal law of the United States, and therefore, so far as our own law was concerned, the effect of the decision was to hold that the seizure had not been unlawfully accomplished. In the absence of any controlling authority, I am relegated to those general analogies that prevail in different departments of our law.

[3-5] It seems to me that it is a general principle of law that, if a thing must be done in order to attach jurisdiction, it must be lawfully done. Our law knows of no maxim which justifies the means by the end. It is obvious, in the case at bar, that it is not a mere seizure that must be pleaded. If that were so, then the seizure might be accomplished by private individuals. Obviously it must be a seizure made by agents of the government, acting for a government purpose. But an agent of the government is such only

within the prescribed limits of his commission, and his commission cannot exceed the boundaries of the legislative grant which authorized its issuance to him. When, therefore, an agent of the government acts in excess of the authority vested in him, his act from a legal standpoint is no longer the act of the government.

Analogous situations are those involving attachments and executions. If an attachment is requisite for the purposes of vesting jurisdiction in the court, there can be no doubt but that the attachment must be executed and the levy made by an officer of the state duly empowered and commissioned with authority and acting upon a writ or warrant sufficient upon its face. An attachment made by any other person or upon inoperative process is void and insufficient as a predicate of jurisdiction. A seizure under an execution, which may be necessary in order to base jurisdiction, must be made by the proper officer armed with a proper writ.

[6] In the case at bar, the seizure was made by officials of the Coast Guard. These officials are in fact authorized by law to accomplish seizures of vessels found committing offenses which would render them liable to forfeiture. If, therefore, the seizure was lawfully accomplished, the jurisdiction of this court to determine the libel ensuing thereon is unquestionable. If, on the other hand, the seizure thus made was unauthorized, and in excess of the power vested in the Coast Guard, then all our reasoning points to the conclusion that such a seizure cannot be an adequate basis for jurisdiction.

An examination of section 581 of the Tariff Act of 1922 (Comp. St. Ann. Supp. 1923, § 5841h) leads to the conclusion that the Coast Guard and customs officials are vested with the power to make seizures of vessels found guilty of offenses subject to forfeiture, if such seizures are made within 4 leagues of the coast. Nowhere is there any authority vested in the Coast Guard to make a seizure beyond the 12-mile limit. Indeed, the libelant does not seem to question this restriction upon the jurisdiction of the Coast Guard. The district attorney argues that the right of the United States, as a sovereign, to make seizure of the vessels of its own nationals on the high seas, cannot be denied, and that the Coast Guard was, at the time of the seizure, exercising the sovereign power of the government.

I am unable to see any force in this contention. The fact that the sovereign has the right to seize ships flying its own flag on the high seas does not constitute a warrant or authority for a person professing to be its servant to do the same thing. It is not true that the Coast Guard may do whatever the sovereign may do. The President of the United States has no such plenary authority. Congress, indeed, has the right to remove the 4-league restriction from the activities of the Coast Guard; but Congress has not removed that restriction or limitation. It is my opinion that beyond the 12-mile limit the Coast Guard has no more lawful authority to make a seizure than any private citizen of the United States.

An appeal has been made to this court not to permit the open sea to become the haven of refuge for citizens violating our laws. But such considerations are hardly helpful in determining a question of jurisdiction. At any rate, it may well be questioned whether the proper cure for lawlessness will be found in an exhibition of lawlessness by officials intrusted with the enforcement of the law.

As the seizure here was accomplished in excess of the authority of the Coast Guard, I am forced to the conclusion that there is no lawful seizure upon which to build jurisdiction. It follows, from this, that the other exceptions to the libel need not be considered, as, in any case, the libel must be dismissed for lack of jurisdiction.

Decree accordingly.