F. B. Vandegrift & Co. *v.* United States (No. 4537)[1]

United States Court of Customs and Patent Appeals, November 7, 1946

*Jordan & Klingaman* (*J. L. Klingaman* of counsel) for appellant.
*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks* and *Alfred A. Taylor, Jr.*, special attorneys, of counsel), for the United States.

[Oral argument October 2, 1946, by Mr. Klingaman and Mr. Weeks]

Before Garrett, Presiding Judge, and Bland, Hatfield, Jackson, and O'Connell, Associate Judges

Hatfield, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, Abstract 50515, overruling appellant's protest and holding certain blown glass tableware, imported into the United States from France, dutiable as assessed by the collector at the port of New York at 60 per centum ad valorem under paragraph 218 (f) of the Tariff Act of 1930, rather than at 50 per centum ad valorem under paragraph 218 (f), as modified by the trade agreement with Czechoslovakia (T. D. 49458, 73 Treas. Dec. 454), as claimed by the importer (appellant).

It appears from the record that the President of the United States, by proclamation dated March 23, 1939 (T. D. 49824), terminated the

---

[1] C. A. D. 347.

rates of duty provided by the trade agreement for reasons therein set forth, and in so doing stated that such rates of duty "shall be terminated in whole on the thirtieth day after the date of this my Proclamation."

The pertinent part of paragraph 218 (f), *supra*, which, with the exception of the rate of duty, is identical with the pertinent part of 218 (f) of the trade agreement, reads:

(f) Table and kitchen articles and utensils, and all articles of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or otherwise   *   *   *   60 per centum ad valorem.

It further appears from the record that the merchandise here involved was entered for consumption on April 22, 1939. No question is raised as to the proper classification by the collector of the merchandise as blown glass tableware.

The sole issue in the case is whether the rates of duty provided for in the trade agreement with Czechoslovakia were in full force and effect on the date of entry—April 22, 1939. If they were, the merchandise was dutiable at 50 per centum ad valorem, as claimed by the importer. If they were not, it was dutiable at 60 per centum ad valorem, as assessed by the collector. The determination of that issue depends upon the interpretation of the language used by the President of the United States in his proclamation in which, as hereinbefore noted, it was stated that the rates of duty provided in the trade agreement "shall be terminated in whole on the thirtieth day after the date of this my Proclamation."

It is agreed by counsel for each of the parties that the thirtieth day after the date of the proclamation was April 22, 1939.

The trial court held, in substance, that as the rates of duty provided in the trade agreement with Czechoslovakia were terminated on April 22, 1939, that is, on the thirtieth day after the date of the proclamation on March 23, 1939, and as the day of the termination of the rates of duty in the trade agreement is not "divisible in a legal sense," as held in *United States* v. *Hurlburt & Sons*, 11 Ct. Cust. Appls. 24, T. D. 38638, those rates were "not in effect" on April 22, 1939, and that, therefore, the involved merchandise which was imported on that date was subject to the duty provided in paragraph 218 (f) of the Tariff Act of 1930, and accordingly overruled appellant's protest. In so holding, the trial court referred to and quoted from the decision in the case of *Arnold* v. *United States*, 9 Cranch 103, 119, wherein it was held that the tariff act of July 1, 1812, was in full force and effect on the date of its enactment, and that merchandise imported on July 1, 1812, was dutiable under the provisions of that act. In its decision, the Supreme Court, among other things, stated:

*   *   *   It is contended, that this statute did not take effect until the second day of July; nor, indeed, until it was formally promulgated and published. We

cannot yield assent to this construction. The statute was to take effect from its passage; and it is a general rule, that where the computation is to be made from an act done, the day on which the act is done is to be included.

The trial court also quoted the following from the decision in the case of *United States* v. *Hurlburt & Sons, supra:*

In the foregoing [Arnold] case, however, there was only one point of time which was involved and that was the time when the act became effective. There was no provision in it for any period of suspension or limitation, nor was there any terminus a quo, nor any relevant calculation to be made in order to give effect to the legislative intention. The cases are therefore clearly distinguishable * * *

With reference to the quoted excerpt in the decision in the case of *United States* v. *Hurlburt & Sons, supra,* the trial court stated:

By the same token, the termination of the proclamations of March 15 and April 15, 1938, by the proclamation of March 23, 1939, was a positive act or thing to be done or given effect on a certain date [April 22, 1939]; and, a day usually not being divisible in a legal sense, this proclamation terminating the rates of duty under the agreement was effective during the entire day, and it necessarily follows that the rates of duty under the trade agreement were not in force on that date.

In the case of *United States* v. *Hurlburt & Sons, supra,* this court had before it the question whether the reliquidation of an entry on July 3, 1919, was made after the expiration of 1 year from the time of entry—July 3, 1918, and the decision involved the construction of section 21 of the tariff act of June 22, 1874, which read:

Whenever any goods, wares, and merchandise shall have been entered and passed free of duty, and whenever duties upon any imported goods, wares, and merchandise shall have been liquidated and paid, and such goods, wares, and merchandise shall have been delivered to the owner, importer, agent, or consignee, *such entry and passage free of duty and such settlement of duties shall, after the expiration of one year from the time of entry,* in the absence of fraud and in the absence of protest by the owner, importer, agent, or consignee, *be final and conclusive upon all parties.* [Italics not quoted.]

The court there held, after citing several authorities, that it was the purpose of the statute there involved

* * * to give to the collector a full year within which to reliquidate an entry in case he saw fit to do so, or conversely, it was not the legislative purpose to limit this authority to less than a full year. This purpose would be best subserved by excluding the day of the entry when computing the year, for if that day be included within the prescribed year that period would be reduced by whatever part of the day of entry in any case had preceded the actual making of the entry itself.

In the course of our decision in that case we stated that the phrase "time of entry" as used in the section there under consideration was intended

* * * to mean the *day* of entry rather than the exact minute or hour of the day when the entry was actually made. This conclusion accords with the general rule that ordinarily fractions of a day are to be disregarded and the day itself is to

be considered as a unit.—Louisville v. Savings Bank (104 U. S., 469); United States v. Stoddard et al. (89 Fed., 699, affirming T. D. 18537—G. A. 3993); United States v. Lumber Co. (142 Fed., 432; 38 Cyc., 314.)—See citations.

In the case of *H. & A. Allan*, T. D. 25292, 7 Treas. Dec. 766, the Board of General Appraisers (now the United States Customs Court) followed the decision in the case of *Arnold* v. *United States, supra*, and held that the act there involved was effective on and from the day of its enactment, January 15, 1903. The act provided that the Secretary of the Treasury was authorized and required "to make full rebate of duties imposed by law on all coal of every form and description imported into the United States from foreign countries for the period of one year from and after the passage of this Act." The court there held that the act expired on January 14, 1904, and that coal imported into the United States on January 15, 1904, was not entitled to free entry thereunder, but was dutiable under the provisions of the tariff act of 1897. In concluding its decision, the board stated:

The period of "one year" necessarily means twelve calendar months, and if the act in question, as held in Arnold's case, went into operation on the day of its passage, January 15, 1903, counting that day as the first day of "the year," *such period necessarily terminated on the day prior to the 15th of January, 1904. Under this view of the case, the vessel arrived after the termination of the time fixed by the statute providing for the admission of coal free of duty.* * * * [Italics not quoted.]

It is clear from the board's decision in that case that had the coal arrived in the United States on the day the act expired, January 14, 1904, it would have been free of duty under the provisions of the act of January 15, 1903.

It is contended here by counsel for appellant that, in view of the decisions in the cases of *United States* v. *Hurlburt & Sons*, and *H. & A. Allan, supra*, the trade agreement with Czechoslovakia was in full force and effect on the day of its expiration, that is, the twenty-second day of April 1939, and, as the merchandise was entered on that date, it was dutiable at 50 per centum ad valorem under the trade agreement.

It is contended by counsel for the Government that the trial court's interpretation of the language in the Presidential proclamation, that the rates of duty provided in the trade agreement "shall be terminated in whole on the thirtieth day after the date of this my Proclamation" is in harmony, as stated in their brief, "with the law as set forth in the case of *Arnold* v. *United States*," *supra*, and that the court's decision is also in harmony with the decision of the Supreme Court in the case of *Griffith et al.* v. *Bogert et al.*, 18 How. 158, which was also cited and quoted from in our decision in the case of *United States* v. *Hurlburt & Sons, supra*.

In the case of *Griffith et al.* v. *Bogert et al.*, *supra*, the Supreme Court held that the language in a statute of the State of Missouri, which provided that no "* * * land, tenements, or hereditaments shall be seized and sold *until after the expiration of eighteen months from the death of such ancestor, or the date of the letters testamentary or letters of administration * * *"* [italics not quoted], should be construed to mean that the date on which the letters of administration were issued should be counted in determining the 18-month period provided for in the statute, and that the sale of lands on the first day of May 1821, was after the expiration of 18 months from the date of the letters of administration—November 1, 1819. In so holding, the court stated, among other things, as quoted in our decision in *United States* v. *Hurlburt & Sons, supra:*

> It would be tedious and unprofitable to attempt a review of the very numerous modern decisions, or to lay down any rules applicable to all cases. Every case must depend on its own circumstances. Where the construction of the language of a statute is doubtful, courts will always prefer that which will confirm rather than destroy any *bona fide* transaction or title. The intention and policy of the enactment should be sought for and carried out. Courts should never indulge in nice grammatical criticism of prepositions or conjunctions, in order to destroy rights honestly acquired.

It is further contended by counsel for the Government that the decision in the case of *H. & A. Allan, supra*, supports the Government's position because, it is stated, "* * * it follows the holding in the *Arnold* case, *supra.*" Counsel for the Government concludes that "* * * when a thing terminates on a day, it must be terminated for the whole of that day, which means that from the first moment of the twenty-second day of April 1939, the trade agreement was not in existence," and that, therefore, the involved merchandise was not entitled to the benefit of the rate of duty provided in the trade agreement.

We are unable to understand how the decisions in the cases of *Arnold* v. *United States, Griffith et al.* v. *Bogert et al.*, and *H. & A. Allan, supra*, support the views urged upon us by counsel for the Government. In each of those cases it was held that in computing the period of time there involved, the first day should be included and the last day excluded, whereas, in the instant case the trial court held, and properly so, we think, and its holding is concurred in by counsel for each of the parties, that in computing the time when the Presidential proclamation was to take effect, the date on which the proclamation was issued should be excluded and the last day included, otherwise the thirtieth day after the date of the proclamation—March 23, 1939—would be April 21, instead of April 22.

Obviously, if, as argued by counsel for the Government, the trade agreement was not in existence from the first moment of April 22,

1939, it was terminated, for all practical purposes, on the twenty-ninth day, and not on the thirtieth day after the date of the proclamation.

We are unable to see any difference in meaning between the language "on the thirtieth day" after the date of the proclamation, and the language "thirty days after" that date.

A contract which terminates 30 days after the date thereof, or on the thirtieth day after that date, would give either party thereto, depending upon the obligations provided therein, the right to carry out the terms of the contract on the thirtieth day. See 17 C. J. S. Contracts Sec. 358.

We are of opinion that the proclamation by the President should be interpreted as meaning that the rates of duty provided in the trade agreement should be terminated on the thirtieth day after the proclamation, and that *thereafter* the rates of duty provided therein should be ineffective. Accordingly, as the thirtieth day after the Presidential proclamation—April 22, 1939, was not divisible in a legal sense, as properly held by the trial court, the rates of duty provided in the trade agreement were in full force and effect on that date. We are constrained, therefore, to disagree with the conclusion reached by the trial court.

For the reasons stated, the judgment is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.

### DISSENTING OPINION

BLAND, Judge: It must be remembered that the rates of duty provided in the trade agreement with Czechoslovakia were terminated on the thirtieth day after the date of the proclamation. The thirtieth day began the instant the twenty-ninth day expired. It is well settled that there is to be no division of a day in the consideration of this kind of issue. Therefore the rates of duty were terminated on the beginning of the thirtieth day, just as tariff acts go into effect for the whole day on the date the President approves the act.

The statement in the majority opinion, "We are unable to see any difference in meaning between the language 'on the thirtieth day' after the date of the proclamation, and the language 'thirty days after' that date," I think clarifies the issue completely. If a man has 30 days after a certain date to pay a debt, of course he has all day on the thirtieth day, which is a wholly different proposition than for him to have a right under a trade agreement the rates of duty of which were terminated at midnight on the twenty-ninth day.

This particular question, as far as the federal courts are concerned, seems to be a novel one. Some state courts' decisions relating to expiration of leases and expiration of insurance policies would seem

to somewhat support the conclusion reached by the majority, but these decisions are not in accordance with the weight of authority and, in my judgment, with the logic of the situation.

There is one interesting state case which is worthy of note, *D. & C. Schwartz, Inc.* v. *De Jong*, 169 N. Y. S. 101, 102 Misc. 553. It related to a lease tenancy and it was provided in the lease that it expired on February 1. The court held that they could not make the tenant get out before his lease expired on the last day of January; therefore he had the day, February 1, to get out.

This "February 1 lease case" illustrates the difficulty of our problem. We here must approach the question from the other side. The lessee was in; they could not put him out until his lease had expired. . Therefore they could not put him out before February 1. But to entitle the importer here to what he desires he must have an agreement in effect at the time he imports his goods. The rates of duty went out on the beginning of the thirtieth day. He is on the outside wanting in and the tenant is on the inside looking out.

It seems to me that the Government is correct in relying upon the case of *Arnold* v. *United States*, 9 Cranch 103. I can see no difference in principles involved. It must be admitted that the facts there are not identical with the facts here, but certainly the same rules apply and in the present instance it seems clear that the importer should not have the advantage of the thirtieth day for his purposes because we do not have to consider the principle of counting the first day or the last day or omitting one or the other of them since there was no effective agreement as to rates of duty in existence one second after midnight on the twenty-ninth day.

To yield to the contention of appellant, who frankly indicates that his position is fraught with considerable doubt, would, in my · judgment, give the importer an extra day after the termination time set by the proclamation to import his goods under the provisions of the trade agreement.

That this case is unique and poses a nice and somewhat confusing question of law is impressed upon our minds by reading the decision of the Supreme Court in *Dutcher* v. *Wright*, 94 U. S. 553, where the court pointed out that in this kind of case the law was very much in confusion at that date. I quote from that case:

Decided cases may be found in which it is held, where an act is required by statute to be done a certain number of days at least before a given event, that the time must be reckoned, excluding both the day of the act and that of the event. *The Queen* v. *The Justices*, 8 Ad. & E. 173; *Mitchell* v. *Foster*, 12 id. 172; *Zouch* v. *Empsey*, 4 B. & Ald. 522.

Search has been made in vain for a decided case in which it is held that both the day of the act and the day of the event shall be included in the computation, in order to ascertain the specified period of time. Cases may be found in which

it is held, that, where the computation is to be made from an act done, the day on which the act is done is to be included. *Arnold* v. *United States*, 9 Cranch, 120.

Exceptions undoubtedly exist to that rule, and it must be admitted that there are many cases in which it is held that the last day is included and that the first is excluded.

Speaking of the conflict of judicial decisions upon the subject, Lord Mansfield said that the cases for two hundred years had only served to embarrass a point which a plain man of common sense and understanding would find no difficulty in construing, and he came to the conclusion that courts of justice ought to construe the words of parties so as to effectuate their deeds and not destroy them, and that "from the date" may, in popular use and even in strict propriety of language, mean either inclusive or exclusive. *Pugh* v. *Leeds*, Cowp. 714.

Applying the rule of the *Dutcher* case to the instant facts, surely under the language used, "on the thirtieth day," both days cannot be counted. But irrespective of this rule it seems clear to me that under the rule laid down as to when a tariff act comes into effect a trade agreement likewise would go out of effect at the beginning of the day prescribed.

It is my view that the trial court, for the correct reasons, arrived at the proper solution, and its judgment should be affirmed.

I am authorized to state that Garrett, P. J., concurs in this dissent.