UNITED STATES v. 673 CASES OF DIS-
TILLED SPIRITS AND WINES.

Civ. A. No. 677.

District Court, D. Minnesota, Third Division.

July 5, 1947.

**624**

Victor E. Anderson, U. S. Atty., of St. Paul, Minn., for the United States.

Lewis L. Drill and O. A. Blanchard, both of St. Paul, Minn., for claimants.

JOYCE, District Judge.

Libel by United States of America against 673 cases of distilled spirits and wines for violation of the internal revenue laws. Samuel H. Taran and Jerry M. Londer, claimants. Claimants filed a motion for a dismissal of the libel for want of lawful seizure of the liquors in question, which was denied without prejudice to claimants to renew it on the trial, and the case was set down for trial on the merits. United States v. 673 Cases of Distilled Spirits and Wines, D.C., 65 F.Supp. 896. At the commencement of the trial on the merits, claimants renewed their motion for dismissal of the libel for want of lawful seizure of the said liquors and also moved to suppress all of the evidence which was obtained by means of such allegedly unlawful seizure.

The libel alleges that Sam. H. Taran and Herman Paster, individually and as copartners, under the firm name of Mayflower Novelty Company, and others unknown, violated the internal revenue laws by engaging in business as wholesale liquor dealers without having paid the special tax provided therefor as required by Section 3253 of Title 26 U.S.C.A. Int.Rev. Code; and possessing liquor intended for use in violating the internal revenue laws under Section 3116 of Title 26 U.S.C.A. Int.Rev.Code.

The answer filed by Sam Taran states that he is the sole owner of the liquor in question; that he operated the Mayflower Novelty Company at 2218 University Avenue, St. Paul, Minn., and that Herman Paster was merely his employee. A claim of ownership was filed by Taran, and another such claim was interposed by Jerry M. Londer as to a portion of the liquors involved. Londer also filed an answer to the libel.

It appears from the evidence that the Mayflower Novelty Company is a corporation organized under the laws of Minnesota for the purpose of engaging in the coin operated machine business, that during the period in question here Taran was its manager and Herman Paster an employee subordinate to Taran. In April 1943 Taran rented a storeroom on the second floor of the Kedney Warehouse, 389 East 8th St., St. Paul, stating to the warehouse manager that he was "interested in a finance company" and that he desired storage space for liquor financed by this company. In June or July of 1943 he also rented room 420 and another fourth floor room at the same warehouse, at which time he stated that part of this space was desired for liquor being financed for the Snelling Liquor Store of St. Paul. Taran furnished his own locks for these storerooms and paid the rent on a flat monthly basis, thereby absolving the warehouse management of any responsibility for their contents as well as the duty of keeping records of storage withdrawals or additions. The liquor that was stored in these rooms was generally handled by a Negro employee of the Mayflower Company, James Tiffin, who was sometimes assisted by a fellow employee, Lee, and occasionally by Herman Paster. Early in October of 1943 the St. Paul branch of the Federal Alcohol Tax Unit received reliable information that a wholesale liquor business was being conducted at the premises of the Mayflower Novelty Company and pursuant to such information two investigators were detailed to keep said premises under surveillance. While so engaged in the late afternoon of October 5th, they observed a large truck back into the loading station of the building, remain there a little over an hour, and then pull out preceded by Herman Paster in his car. The investigators followed the truck to the intersection of U. S. Highways Nos. 10 and 8, northwest of St. Paul, where they observed Paster turn around and head back

toward St. Paul, the truck proceeding west on Highway 10. They continued to trail the truck to Fargo, North Dakota, where they stopped it and discovered that it contained a load of 380 cases of liquor. The driver and owner of the truck, Rex McCann, a contract trucker of Missoula, Montana, showed them a bill of lading therefor which listed "Idaho State Liquor Commission" as consignee and destination as "State Liq. Store No. 24, Wallace, Idaho", which he alleged had been given him by Herman Paster. The investigators confiscated, inventoried, and stored this load of liquor at Fargo and then returned to St. Paul accompanied by McCann The latter, upon their arrival there, pointed out the Kedney Warehouse as the place where he, with the aid of Paster and Jim Tiffin, had loaded half of the confiscated liquor. He then told them that the remainder of the liquor had been transferred to his truck in the loading station of the Mayflower Company building, another truck having immediately prior thereto unloaded such liquor therein. McCann also gave the information that he was hauling the liquor for R. E. McDonel, a tavern operator of Wallace, Idaho, as he had done with a previous load from the Kedney Warehouse in late September of 1943, and that he had no idea why the bill of lading was made out as it was, but that he knew that he was not to deliver the load to Liquor Store No. 24 in Wallace. As a result of this information, two Alcohol Tax agents went to the Mayflower premises on October 6th and asked Sam Taran for permission to inspect the premises, which was given. In two different rooms in the building, a total of 142 cases of distilled spirits and wines were found. These cases were inventoried and each room placed under a "detainer" notice. These notices were signed by Taran and were regularly renewed until the liquor was removed from the premises. Taran claimed he had bought the liquor from various dealers for the purpose of entertaining and furnishing gifts for his customers. On October 8th several Alcohol Tax Unit agents went to the Kedney Warehouse without a search warrant and inquired about any liquor that might be stored there by the Mayflower Company and were informed that the records were kept at the main office on University Avenue. While these records were being checked two agents remained at the warehouse and, upon inquiry as to the identity of two men who came into the premises, were informed that they were employees of the Mayflower Company—Tiffin and Lee. The latter obtained several hand trucks and followed by the agents went to the second floor storeroom, where they remained standing before the locked door for a considerable period of time. One of the government agents then went up to them, identified himself and asked the Negro to open the door, which he did. The agents observed that the room contained a considerable number of cases of liquor and then ordered the door to be locked again. The agents took these two employees into custody and also Paster when he arrived about an hour later. The three were then taken to the Alcohol Tax Unit where a statement was obtained from Paster. Later on that same afternoon the hinges were removed from the door on room 420 of the Kedney Warehouse, where more liquor was found. The contents of both rooms were inventoried and detainer notices signed by Paster were posted on the doors and such notices were regularly renewed until October 14th, when the 531 cases contained in the Kedney Warehouse room and the 142 cases at the Mayflower Company premises were removed to government storage.

 1. The libel alleges violation of Section 3253 and also "that certain property used and intended for use in such violation was seized by agents of Alcohol Tax Unit and is subject to forfeiture within the meaning of Section 3116 of the Internal Revenue Code. Section 3116 provides that "It shall be unlawful to have or possess any liquor or property intended for use in violating the provisions of this part, or the internal-revenue laws, or regulations prescribed under such parts or laws, or which has been so used, and no property rights shall exist in any such liquor or property. * * *"

It might be well to first note the recent decision of the Eighth Circuit Court of Appeals in the case of United States v. Windle, 8 Cir., 158 F.2d 196, wherein a

libel was filed by the United States of America for forfeiture of a 1940 Dodge coupe and its contents consisting of approximately 48 gallons of whiskey. While the libel stated that the distilled spirits were at the time of seizure being offered for sale in violation of Title 26 U.S.C.A. Int.Rev. Code, § 3253, it further stated that the liquor and automobile became forfeited to the United States under 26 U.S.C.A. Int. Rev.Code, § 3116. The District Court for the Southern District of Iowa entered a judgment dismissing the automobile from the libel and ordering its return to the intervener, from which judgment the United States appealed. On appeal it was held that an automobile used with intent to carry on the business of a wholesale liquor dealer without paying required tax and keeping proper records is subject to forfeiture under Section 3116, even though the dealer may also be operating in violation of and subject to the sanctions of Section 3253, and that Section 3116 provides for forfeiture in any case of intended violation of revenue laws relating to intoxicating liquors as an aid to the enforcement of such revenue laws. By virtue of the rule contained in the Windle case it must be held that the liquors in question are subject to forfeiture under the provisions of Section 3116.

2. It is elementary that the burden of proof is upon the government to show affirmatively the existence of every fact which is an element of a proceeding for forfeiture of distilled spirits as alleged in the information of libel. Jackson v. United States, C.C., 21 F. 35; In re Quantity of Distilled Spirits, Fed.Cas. No. 11494; and United States v. One Marmon Automobile, D.C., 5 F.2d 113, 115. Therefore it is incumbent upon the government in the instant case to affirmatively show that the liquor seized was in the possession of claimants, or either of them; that it had been used in violation of the Internal Revenue Laws or regulations prescribed under such laws; and that it was intended for use in violation of the provisions of the Internal Revenue Laws or regulations prescribed under such laws.

However, the burden of proof resting upon the government is satisfied by proof which establishes the necessary elements by a "reasonable preponderance of the evidence." In United States v. Regan, 232 U.S. 37, 49, 34 S.Ct. 213, 217, 58 L.Ed. 494, which was a suit by the government to recover $1,000 as a penalty for an alleged violation of Section 4 of the Alien Immigration Act, 34 Stat. 898, the question for decision was whether it was essential to a recovery that the evidence should establish the violation beyond a reasonable doubt. The court said: " 'The rule of evidence requiring proof beyond a reasonable doubt is generally applicable only in strictly criminal proceedings. It is founded upon the reason that a greater degree of probability should be required as a ground of judgment in criminal cases, which affect life or liberty, than may safely be adopted in cases where civil rights only are ascertained. 2 Russell, Crimes, 7th Am.Ed., 727. It often happens that civil suits involve the proof of acts which expose the party to a criminal prosecution. Such are proceedings under the statute for the maintenance of bastard children, proceedings to obtain a divorce for adultery, actions for assaults, actions for criminal conversation or for seduction, and others which might be named. And in such actions, which are brought for the determination of civil rights, the general rule applicable to civil suits prevails, that proof by a reasonable preponderance of the evidence is sufficient.' "

The Circuit Court of Appeals of the Seventh Circuit applied the rule of the Regan case in a libel action for the forfeiture of land and certain personal property which had been allegedly used in the production of distilled spirits with intent to defraud the government of taxes imposed thereon, United States v. About 151.682 Acres of Land, 99 F.2d 716. The court said, 99 F.2d at page 718: " * * * It is also claimed the burden was on the Government to establish its libel beyond a reasonable doubt. This contention is answered and disposed of adversely to claimants in United States v. Regan, * * *, wherein the cases cited and relied upon by claimants are distinguished."

See also Grain Distillery No. 8 of Eastern Distillery Co. v. United States, 4

Cir., 204 F. 429, 122 C.C.A. 615; Pocahontas Distilling Co. v. United States, 4 Cir., 218 F. 782, 134 C.C.A. 566; United States v. One Distillery and Fixtures, D.C., 193 F. 720; One Buick Automobile et al. v. United States, 8 Cir., 275 F. 809, 810, 811. The Regan case has been followed by a long line of decisions, among which are Grant Bros. Const. Co. v. United States, 232 U.S. 647, 660, 34 S.Ct. 452, 454, 58 L. Ed. 776; Ex parte Quirin, 317 U.S. 1, 40, 63 S.Ct. 1, 17, 87 L.Ed. 3, 19. The most recent decision citing the Regan case is that of Harvey v. Early, Collector of Internal Revenue, et al., D.C., 66 F.Supp. 761, 766.

█ Does the evidence adduced herein on the part of the government establish the necessary elements of its libel action by a preponderance of the evidence? This question must I think be answered in the affirmative. The lot of 142 cases seized at the Mayflower Novelty Company premises were under Taran's direct control and he admitted to the government agents at the time of their original search that he owned this liquor. With reference to the 531 cases seized at the Kedney Warehouse, the testimony of government witnesses clearly established that the rooms in which this liquor was stored had been rented by Taran personally and the contents had been handled exclusively by his employees, Tiffin, Lee or Paster. This evidence constitutes a sufficient showing of possession by claimant Taran.

Further, it appears without dispute that within the period of time covered by the libel of information Taran made at least two sales and deliveries of liquor in wholesale quantities without having paid the special tax imposed upon wholesale liquor dealers. These two transactions were proved at the trial by the introduction in evidence, over the objections of counsel for claimants, of the record of an information in Criminal Case No. 6930[1] before the United States District Court, District of Minnesota, Third Division, charging Sam Taran and Herman Paster with selling and delivering 400 cases of whiskey at over-ceiling prices in violation of the Maximum Price Regulations of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., to A. F. McFee and R. E. McDonel on or about August 4, 1943 and with selling and delivering 100 cases of whiskey at over-ceiling prices to the same customers on or about August 20, 1943. A certified copy of the original Term Minute Entry of April 6, 1944 of the same court was also introduced in evidence showing the arraignment of Taran and Paster under the above information and the entry of their plea of "guilty" thereto. With reference to evidence of this type the Circuit Court of Appeals of this Circuit in King v. United States, 8 Cir., 144 F.2d 729, 732, stated as follows: "It is conceded that subject to many exceptions the general rule is that evidence that the accused has committed another crime independent of, and unconnected with, the one on trial is inadmissible; it is not competent to prove one crime by proving another. 22 C.J.S., Criminal Law, § 682, page 1084. The exception relied upon by the government in this case is that evidence of other offenses * * * is admissible to show criminal intent (1) where the other offenses are similar to and (2) not too remote in time from that charged. 22 C.J.S., Criminal Law, §§ 683-689; Jones on Evidence, 1913 Ed., p. 144; Colt v. United States, 8 Cir., 190 F. 305, 307; Neff v. United States, 8 Cir., 105 F.2d 688, 691; Tinsley v. United States, 8 Cir., 43 F.2d 890, 893."

█ The question of intent is likewise in this case. The libel of information charges Taran with the possession of liquor or property used and "intended" for use in violating the Internal Revenue Laws. What was said in Neff v. United States, 8 Cir., 105 F.2d 688, 691, is equally pertinent here: " 'The intent and disposition with which one does a particular act must be ascertained from his acts and declarations before and at the time; and when a previous act indicates an existing purpose, which from known rules of human conduct may fairly be presumed to continue and control the defendant in the doing of the act in question, it is admissible in evidence. * * * The practical limit to its admission is that it must be sufficiently

---

[1] No opinion for publication.

significant in character, and sufficiently near in point of time, to afford a presumption that the element sought to be established existed at the time of the commission of the offense charged. The limit is largely in the discretion of the judge.'"

■ Therefore, the evidence of two previous sales in wholesale quantities within a period of less than two months previous to the seizure of the liquor in question was admitted as bearing upon the question of what Taran intended to do with this considerable quantity of liquor in his possession at the time of its seizure by government agents. Such evidence seems to be sufficiently significant, in point of time as well as character, to bring it within "the practical limit" of the exception to the general rule set forth in the Neff case.

■ As to the sufficiency of the evidence to sustain the allegations of the libel of information, it is well established that evidence of a single sale is sufficient to sustain a conviction of a defendant of carrying on a wholesale liquor business without payment of the special tax provided therefor, where there are corroborating circumstances tending to show that defendant was engaged as a wholesale liquor dealer or where defendant had liquor on hand, or was ready and able to procure it, in either case with the purpose of selling some or all of it to such persons as he might accept as customers. Bailey v. United States, 6 Cir., 259 F. 88, 92; Sodini v. United States, 6 Cir., 261 F. 913; Conyer v. United States, 6 Cir., 80 F.2d 292, 294; Johnson v. United States, 5 Cir., 84 F.2d 114, 115, certiorari denied 299 U.S. 574, 57 S.Ct. 37, 81 L.Ed. 423; Wilson v. United States, 6 Cir., 149 F.2d 780, 781, certiorari denied 326 U.S. 753, 66 S.Ct. 92, 90 L.Ed. 451; Supreme Malt Products Co. v. United States, 1 Cir., 153 F.2d 5, 7; Rood v. United States, 4 Cir., 7 F.2d 45, 47. The Circuit Court of Appeals of the Eighth Circuit in the case of Taran v. United States, 88 F.2d 54, indicated that it was in accord with the above rule when it said 88 F.2d at page 58: " * * * There was also evidence that defendant held himself out as ready, willing, and able to deliver liquor in quantities exceeding five gallons in one sale. Through Larson, he was attempting to effect such sales, and this was sufficient to show that he was carrying on the business * * * of a wholesale liquor dealer. Day v. United States, 8 Cir., 31 F.2d 71; Hodge v. United States, 8 Cir., 191 F. 165; Sodini v. United States, 6 Cir., 261 F. 913; Bailey v. United States, 6 Cir., 259 F. 88. This is not a case in which there was an isolated sale unconnected with circumstances showing that defendant was in the business of selling. * * *"

There are such corroborating circumstances in this case. The evidence introduced by the government shows that on October 7, 1943, Bruce Motor, an interstate trucking concern, received a telephone order to pick up some freight at the Mayflower Novelty Company premises. Upon arriving there the pick-up driver found 6 crates with a bill of lading listing their contents as coin operated machines, which actually were found to contain 12 cases of liquor upon their arrival at the freight terminal of the Bruce Motors. The bill of lading covering these crates listed the Weiner Novelty Company of Des Moines, Iowa as consignee and Northwest Novelty Company as consignor. When the government agents were notified of this shipment they allowed it to go through, but no one called for it at Des Moines. It was later confiscated there at which time it was determined that there was no such company as the Weiner Novelty Company in existence in Des Moines. It is true that neither Taran nor the Mayflower Novelty Company is mentioned in the bill of lading covering this shipment. However, there was no explanation offered at the trial as to why these crates were picked up at the Mayflower premises if they were the property of the Northwest Novelty Company; nor was there an explanation as to who or what the latter company was and/or its connection with the Mayflower Company; nor as to why the shipment was consigned to a fictitious consignee in Des Moines, Iowa.

Evidence was also introduced that three truck loads of liquor were hauled from St. Paul to Duluth by McKeown Trucks, another truck common carrier, and that its

pick-up driver in St. Paul was ordered to contact Herman Paster at the Mayflower Company premises as to where such loads were to be obtained. Paster directed the driver to the East Side Liquor Store in Minneapolis where arrangements were made for the three loads to be taken from the liquor store and/or its stock in the Security Warehouse in June and July of 1943 and delivered to the Last Chance Liquor Store of Duluth. Also, a truck from Burlington, Iowa came to St. Paul early in November of 1943 with orders to its driver to communicate with Sam Taran as to where he could procure a load of liquor. He was in turn taken by Paster to the Snelling Liquor Store in St. Paul where he received 100 cases of liquor which were transported to Iowa. It was also brought out at the trial that Taran was connected with the Snelling Liquor Store through finance dealings. There is also the evidence before mentioned as to the two loads of liquor picked up by McCann, the trucker from Missoula, Montana, at the Kedney Warehouse and Mayflower Company premises in the latter part of September and early October, 1943. There was an explanation offered at the trial that Taran and Paster had bought this liquor at various legitimate sources for the convenience of McFee and McDonel, a tavern owner and coin machine operator, respectively, of Wallace, Idaho, with money furnished by the latter. However, this explanation is worthy of little consideration when viewed in the light of Taran's and Paster's plea of guilty to two previous sales of liquor in wholesale quantities to these same individuals in violation of O.P.A. regulations.

 Throughout these various transactions there is a web of circumstances connecting Taran's name. While the evidence of these dealings may not be sufficient of itself to establish as a concrete fact that Taran was the seller or was interested personally in each of these sales, it does constitute sufficient corroborating circumstances, with the two sales definitely proved, to establish that Taran was engaged in the business of a wholesale liquor dealer during the time covered by the libel. Such evidence is regarded as sufficient to sustain a criminal conviction of engaging in the

business of a wholesale liquor dealer without the proper authority, where the burden is upon the government to establish defendant's guilt beyond a reasonable doubt. Hence, it will amply sustain the government's lesser burden here of proof by a preponderance of the evidence. And having established that Taran was engaged in the business of a wholesale liquor dealer in violation of the Internal Revenue laws, it can be fairly presumed from the "known rules of human conduct" that such existing purpose continued with him up to the time of the seizure of the liquor in question, justifying its forfeiture under Section 3116. Neff v. United States, supra. Were the inferences drawn from Taran's activities in these various transactions and previous illegal sales unwarranted, one man and one man alone is in the best position to make the necessary denials. That man is Taran himself. He better than anyone knows what his financial interest and connections with these various transactions were. He more than any other person knows what plans for the disposition of the liquor he was harboring on October 6 and 8, 1943, when the liquor was detained. Yet Taran has seen fit to absent himself from the jurisdiction of this court throughout these proceedings, and the court is not willing to ignore this significant silence. United States v. Fifty-Two Cases, More or Less, of Distilled Spirits et al., D.C., 62 F.Supp. 749, 751, citing One Buick Automobile v. United States, 8 Cir., 275 F. 809, 810, 811.

3. Claimants contend that the searches for and seizures of the liquor in question at the Mayflower Company premises and the Kedney Warehouse were in violation of their Constitutional rights and therefore unlawful, and that their renewed motions to dismiss the libel for want of lawful seizure and to suppress all of the evidence obtained by means of such unlawful seizures should be granted.

 This question has already been determined adversely to claimants by this court in this case (United States v. 673 Cases of Distilled Spirits and Wines, D.C., 65 F.Supp. 896) wherein it was held, at page 900: "The reasoning in the Strong case (Strong v. United States, 1 Cir., 46 F. 2d 257, 79 A.L.R. 150) is clear that as the

statute there involved provided that in the event of possession of the liquors intended for use in violation of the act, 'no property rights shall exist in any such liquor,' and that in the happening of that event claimant became divested of any title or right in the property and is in no position to complain about an alleged unlawful seizure. The present action is brought under Section 3116 of the Internal Revenue Code, 26 U.S. 'C.A. Int.Rev.Code, § 3116, which is in substantially the same form as the statute in the Strong case, so it is authority for the government's position that as its possession here is conceded, the only issue for trial is whether or not the liquor is forfeit under the Internal Revenue laws." (Parenthesis supplied.)

The court adheres to the views expressed in the above decision. As noted in that decision and cases therein cited, the United States must return property taken from claimants thereof under an illegal search and seizure *only* in those instances where it has no evidence except that obtained by the illegal search and seizure that the property was contraband or unlawfully owned or possessed by claimants. See also Turner v. Camp, U. S. Atty., et al., 5 Cir., 123 F.2d 840, 842. The fact that the res of this action, namely the liquor, was obtained by means of the alleged unlawful seizure does not prevent any further proceedings against such res. There is, of course, a well recognized distinction between using illegally acquired property as evidence and its status to support jurisdiction in a libel proceeding. In Dodge v. United States, 272 U.S. 530, at page 532, 47 S.Ct. 191, 71 L.Ed. 392, the court held: "The Circuit Court of Appeals relied on the often quoted language of Mr. Justice Story in The Caledonian, 4 Wheat. 100, 4 L.Ed. 523, to the effect that anyone may seize any property for a forfeiture to the Government, and that if the Government adopts the act and proceeds to enforce the forfeiture by legal process, this is of no less validity than when the seizure is by authority originally given. The statement is repeated by the same judge in Wood v. United States, 16 Pet. 342, 359, 10 L.Ed. 987, and Taylor v. United States, 3 How. 197, 11 L.Ed. 559. See also Gelston v. Hoyt, 3 Wheat. 246, 310, 4 L.Ed. 381. The owner of the property suffers nothing that he would not have suffered if the seizure had been authorized. However effected it brings the object within the power of the Court, which is an end that the law seeks to attain, and justice to the owner is as safe in the one case as in the other. The jurisdiction of the Court was secured by the fact that the res was in possession of the prohibition director when the libel was filed. The Richmond, 9 Cranch 102, 3 L.Ed. 670; The Merino, 9 Wheat. 391, 403, 6 L.Ed. 118. The Underwriter, 2 Cir., 13 F.2d 433, 434."

See also Boyd v. United States, 116 U.S. 616 at page 623, 6 S.Ct. 524, 29 L.Ed. 746; Rothman v. Campbell, D.C., 54 F.2d 103, 106; Burkis et al. v. United States, 3 Cir., 60 F.2d 452, 453; McShann v. United States, 10 Cir., 67 F.2d 655, 656, and cases cited therein.

In the instant case, the liquor was in possession of the federal government at the time the libel was filed. Therefore this court obtained jurisdiction under the rule of Dodge v. United States, supra. Moreover, counsel for claimants have conceded jurisdiction of this court, and it has been amply proved by evidence other than that obtained in the alleged illegal search and seizure that the liquor in question was contraband or unlawfully owned or possessed, thereby causing it to be forfeit under the provisions of the Internal Revenue laws.

4. It is the claim of Jerry Londer that he was the owner of the 149 cases of liquor seized from room 420 at the Kedney Warehouse and 60 of the 142 cases seized at the Mayflower Novelty Company premises. He testified that he bought a tavern in St. Paul on July 12, 1943 together with a considerable stock of liquor which was stored in the basement of the tavern; that due to water seepage in the basement the cases in which this liquor was contained were disintegrating and for this reason plus that of security he wished to move them elsewhere; that he made arrangements at the Kedney Warehouse through Taran whom he had known for 12 to 15 years, and Mr. Anderson, the Kedney Warehouse superintendent, whereby he

---

rented room 420 which Taran had theretofore rented, and that he thereafter stored the liquor from the basement of his tavern in said room; that later on that same summer he borrowed $2000 from Taran and as security therefor delivered 60 cases of liquor to the latter, which allegedly were part of the stock seized at the Mayflower Company premises.

The government witnesses Anderson and Miller, superintendent and manager respectively of the Kedney Warehouse, specifically denied that Londer had made any arrangements for rental of storage space at the Kedney Warehouse. Londer himself was very vague as to the date this liquor was brought to the warehouse for storage, placing the date as some time in July, August or September of 1943. He introduced no evidence that he had ever been billed for rental of space at this warehouse. He claims that there was a note executed between him and Taran as evidence of the debt he owed the latter, yet this note was not produced in evidence at the trial. In fact, his entire claim of ownership is sought to be proved wholly on his uncorroborated testimony on the witness stand. His testimony with respect to the purchase and operation of the tavern is supported by documentary proof and there is a pencilled inventory of liquor in evidence which is claimed by him to have been made at the time he was negotiating to buy this tavern and its stock of liquor stored in the basement. However, such inventory is not definitely earmarked as coming from such a source nor does it contain the serial numbers or other positive identification of the cases of liquor it represents.

"It is a fundamental rule that the burden of proof in its primary sense rests upon the party who, as determined by the pleadings, asserts the affirmative of an issue and it remains there until the termination of the action. It is generally upon the party who will be defeated if no evidence relating to the issue is given on either side. Lilienthal's Tobacco v. United States, 97 U.S. 237, 24 L.Ed. 901; Omaha Hotel Co. v. Wade, 97 U.S. 13, 24 L.Ed. 917; Davis v. O'Hara, 266 U.S. 314, 45 S.Ct. 104, 69 L.Ed. 303." Reliance Life Ins. Co. v. Burgess, 8 Cir., 112 F.2d 234, 238, certiorari denied 311 U.S. 699, 61 S.Ct. 137, 85 L.Ed. 453.

Rule 8(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides: "In pleading to a preceding pleading, a party shall *set forth affirmatively* * * * any other matter constituting an avoidance or affirmative defense. * * *" (Emphasis supplied.)

See also 20 Am.Jur., Evidence, Sec. 137, pp. 142–143. Londer's claim of ownership constitutes an affirmative defense to the libel action and therefore by reason of the above rules the burden of proof rests on him to establish his claim of ownership. Upon viewing the evidence as to ownership by him it appears to give equal support to each of two inconsistent inferences, namely that Londer did or did not own the liquor in question. Therefore judgment must go against Londer upon whom rests the burden of sustaining the inference that he did own the liquor. When "* * * proven facts give equal support to each of two inconsistent inferences, judgment must go against the party upon whom rests the burden of sustaining one of these inferences as against the other. * * *" Liggett & Myers Tobacco Co. v. De Parcq, 8 Cir., 66 F.2d 678, at page 684 (citing cases); Henry H. Cross Co. v. Simmons, 8 Cir., 96 F.2d 482, 486. See also Kehoe v. Commissioner of Internal Revenue, 3 Cir., 105 F.2d 552, 555.

After a careful consideration of all the evidence in this case the court is convinced that Taran sold and was ready to sell the liquor he possessed to the highest bidder in wholesale quantities and was not concerned with the Federal requirement that wholesale liquor dealers possess permits and special tax stamps in order to ply their trade.

The renewed motion for dismissal of the Libel and the motion to suppress all the evidence obtained by the alleged unlawful search and seizure are denied and a Decree will be entered condemning the distilled spirits and wines as forfeit to the United States. Findings of Fact, Conclusions of Law and Order for Judgment in accordance with the foregoing will be filed and will be considered in conjunction therewith.